Joseph R. Ingersoll and Others, Trustees of the estate of William Bingham, deceased, v. Simeon B. Lewis.

1. Where the agent of the owner enters upon land with the avowed object of claiming it, making a survey thereof with the knowledge and assent of the person in possession, these acts operate to bar the running of the statute: and, if the proof of them is satisfactory to the jury, the court should give a binding direction to that effect.

2. Where one in possession of Black-acre and of White-acre, in purchasing Black-acre of A., admits A.'s title to a larger tract embracing both Black and White-acre, such admission interrupts the running of the statute of limitations as to White-acre.

Error to the Common Pleas of Tioga.

The plaintiffs below, the trustees of Wm. Bingham's estate, brought this action of ejectment against Simeon B. Lewis, to recover one hundred and sixty acres of land, being part of warrant No. 1835, surveyed 23d July, 1793, to Thomas M. Willing. The

plaintiffs showed title in themselves. The defendant relied upon the statute of limitations. The possession which he showed, as to a portion of the land, one hundred acres, called the Baker tract, was begun in 1817, by Amos Baker, who had a survey made of one hundred acres, and chopped some three or four acres, but cleared no part of it. In the fall of 1820, Baker sold whatever interest he had in this tract to Lewis, the defendant, who went upon it, built a house and continued to reside thereon to the time of trial.

At the time of the sale to him by Baker, or soon after, Lewis began to cut timber, and to clear, on a tract of some sixty acres, which lay between the Baker tract and the New York line, on the north. In 1824 he permitted one Schoonover to go into possession of this tract, who remained on it a year or two and built a house, when Lewis paid him for what he had done, and he moved off. Lewis then took and kept possession of it from that time forward.

On 22d November, 1823, Lewis contracted with Mr. Jackson, the attorney of the plaintiffs, for the purchase of the one hundred acres at a certain price, " being a part of No. 1835."

In 1834 John Goodspeed and Isaac H. Metcalf went on to warrant No. 1835, to survey it, preparatory to selling the unsold parts of it. They were employed by Dr. Rose, the general agent for the plaintiffs. The testimony of these witnesses upon the trial was as follows :—

John Goodspeed, sworn.—I surveyed this lot in April, 1834 ; I found old lines and corners there; there was about one hundred acres in this lot, within the old survey; I think at that time Lewis told me he had bought the Schoonover improvement; I never knew of any other improvement Lewis had on this one hundred acres besides the Schoonover lot. I made this survey by direction of Doctor Rose; he was then said to be the agent of the Bingham trustees. We went to Lewis's house; I told Mr. Lewis my business; I believe he went with us and showed us the lines; I could not say whether he went round with us or not.

The Schoonover lot lies right north of Lewis's lot, between that and the state line, and contains about sixty acres; I surveyed that lot the same day. I rather think the Schoonover lot had been run (said to have been by Tharp) before I run it; there were old lines; I made a draft of these lots. I know that I marked the Schoonover lot, for Mr. Lewis. It was stated in my notes as surveyed for him; I think he informed me that he had bought the possession of Schoonover, that he owned Mr. Schoonover's possession; I believe

Mr. Lewis went to the corner of his lot on the north end, the north-east corner; I don't think he went through to the state with us. In 1826 or 1827, Dr. Rose requested me to do the surveying for the Bingham estate; after that he gave me written instructions to make a re-survey of these lands, when I found a person in possession; I put his name in the draft when it was surveyed for him; this was my instructions from Dr. Rose.

Cross-examined.—Previous to 1834, I gave contracts for most of the lands I surveyed; I don't recollect of Mr. Lewis refusing to take a contract, I don't think I asked him to take a contract; the most of land I surveyed that year I did not give contracts for until I could make drafts of the lands surveyed; in the year 1834 some of the settlers I charged for surveying, and some not. My instructions from Dr. Rose were explicit; that if I found a man on land who refused to contract, I might survey it off for any other person who would take a contract. I cannot recollect the conversation with Mr. Lewis.

Isaac H. Metcalf, sworn.—I was with Squire Goodspeed when he surveyed this land. In the first place, Mr. Goodspeed told Mr. Lewis he came on to survey the old lot; I meant to say his business was to survey the old surveys. Lewis lived on the old lot; we went round the lot. When we got round his hundred acres, something was said about the Schoonover lot; at first Lewis rather declined having it surveyed, he said he had it surveyed by Mr. Tharp, if I understood right; Goodspeed told him he did not care about Tharp's surveys, that Tharp was not employed to survey for Bingham's trustees; Goodspeed told him he would just as leave he [Lewis] should have the land as anybody, but if he would not have it, he would sell it to anybody who would buy it. Finally Lewis concluded to have it run, and we went on and run it.

Cross-examined.—I think Goodspeed told Lewis that Dr. Rose did not charge anything for surveying their lots. I don't recollect the conversation distinctly.

The summons in this case was served 13th August, 1844.

Upon the trial, the defendant contended that he had possession of the lands in controversy more than twenty-one years before suit brought; that he had his claim designated by metes and bounds; that his claim, thus designated, embraced all the lands in controversy, and that nothing had been done which in law destroyed his claim.

The plaintiffs relied upon their legal title, and to defeat the defendant's adverse possession relied upon the contract of 1823 for the purchase of the 100 acres, part of what the defendant now

claims, as it did not, as they alleged, appear that there was anything to show that he then made any claim to more than the 100 acre lot.

The plaintiffs also relied upon the entry made in 1834, by Goodspeed and Metcalf, as defeating all right of defendant under the statute of limitations.

The court (ANTHONY, President) charged the jury as to the effect of the entry by Goodspeed and Metcalf, and of the agreement of 22d November, 1823, as follows :—

" The counsel for the plaintiffs in this suit allege that the evidence in the cause is sufficient to bar the defence of the defendant under the statute of limitations, on these several and distinct grounds :

"The first is, that the entry as proved by the witnesses is altogether sufficient ; and the second is, that the agreement of November 22, 1823, signed by Lorentus Jackson, on behalf of the agent of the Bingham trustees, Doctor Rose, of the one part, and Simeon B. Lewis of the other part, is such recognition of the plaintiffs' title, and such admission by defendant, as is abundantly sufficient.

"1. As to the entry : In order to prevent the statute of limitations from running, the plaintiffs allege that the entry by John Goodspeed, in 1834, when he re-surveyed the lands in possession of Simeon B. Lewis, is sufficient to avoid the effect of the statute of limitations. In the case of Altemus v. Campbell, 9 W. 28, the court lay down the law that there must be an explicit declaration, or an act of notorious dominion, by which the claimant challenges the right of the occupant; or it cannot, perhaps, be better defined than by saying, that the entry must bear on the face of it an unequivocal intent to resume the actual possession. Admitting the facts as testified by Goodspeed and Metcalf, we are of opinion that the entry made by them on the land in April, 1834, is not sufficient to destroy the effects of the adverse possession of defendant under the statute of limitations.

" 2. As to the agreement : We have listened with much attention to the arguments of the counsel on this point, and are satisfied that, if we are to regard the decisions of the Supreme Court, and that we are bound to do so, no one will deny, as they must ultimately settle all questions of law respecting our land titles, they have, as we believe, established principles which govern in the present case. In Sailor v. Hertzog, 2 Barr, 182, Chief Justice Gibson reviews the former decisions on this point, and comes to the conclusion that the admissions of a party are evidence to show that his possession is not adverse, and are to be received to destroy his

adverse possession. In this case Simeon B. Lewis, the defendant, went into possession of the land about 1820, and began to clear and cultivate. The line had been run off so far as to include one hundred acres. On the 22d November, 1823, the following agreement is entered into and signed by Simeon B. Lewis :—

" ' This agreement, made this twenty-second day of November, A. D. one thousand eight hundred and twenty-three, between Robert H. Rose, as attorney for the devisees of the late William Bingham, on the one part, and Simeon B. Lewis, of the county of Tioga, and state of Pennsylvania, of the other part, witnesseth, that on condition of an improvement and residence on it, the said Simeon B. Lewis is to be entitled to a lot of land which has been surveyed for him in the township of Westfield, in the county aforesaid, containing one hundred acres, for which he is to pay to the said devisees, at the rate of two dollars and fifty cents per acre, one-fifth on the 10th day of December, one thousand eight hundred and twenty-three, and one-fifth part, with the interest, annually afterwards, until the whole be paid, interest to commence at the time appointed for the first instalment to be paid; and in case the said Simeon B. Lewis shall abandon the said lot, or leave it untenanted for the term of six months, at any time previous to the payment of the first instalment, then the devisees of the late William Bingham, or their agent or attorney, shall have full power to sell or dispose of the said lot to any other person. Being a part of No. 1835.'

'LORENTUS JACKSON, [L. S.]

Witness,     As attorney of the devisees aforesaid.

' Benj. S. Lewis.'   SIMEON B. LEWIS, [L. S.]

" Can this be considered in any other light than an admission that the title to the land is in the devisees of William Bingham, an acknowledgment that the one hundred acres was surveyed for him in Westfield township, that he was to pay the devisees two dollars and fifty cents per acre in instalments, that he was not to abandon the lot, &c., and if he did, the devisees should have full power to sell or dispose of said lot to any other person, it being a part of lot No. 1835.

" If Lewis claimed the lot adversely or in hostility to the title of Bingham's devisees, would he authorize them to sell it to any other person ? would he, under his hand and seal, acknowledge that the lot had been surveyed for him, for which he was to pay two dollars and fifty cents per acre, when he claimed to hold the land as his own against any other persons ?

"Nothing is said in the agreement about his improvement, his interest in the land, nothing about a compromise of doubtful claims; if this agreement then do not amount to an admission of the title of Bingham's devisees, so far as to avoid the statute of limitations, I can hardly conceive what admission would have that effect.

"With regard to the lot called the Schoonover lot, lying between the one hundred acre lot and the New York state line, containing sixty acres, the testimony is somewhat conflicting and contradictory; and it will be a matter of fact for the jury to decide, whether there was an actual, continued, visible, notorious, distinct, and hostile possession of these sixty acres by Lewis and Schoonover for twenty-one years before this suit was brought in July 1844. If Lewis defined and marked or designated his boundaries, went into actual possession of this land, cleared, cultivated, and occupied the same, used the land for the usual purposes of farming during his possession, and then placed Schoonover on the land to cultivate and improve it, and Lewis, after Schoonover moved off, went on with his clearings and improvements, and continued to occupy it, and held actual adverse possession of this land for twenty-one years before suit was brought, then the plaintiffs cannot legally recover the Schoonover lot. But if, on the contrary, the jury are not satisfied from the evidence that Lewis and Schoonover have had such actual, continued, uninterrupted, hostile possession for twenty-one years before the ejectment was instituted in this case, then the plaintiffs have a right to recover this part of the land, as well as the residue.

"It was not necessary for Simeon B. Lewis to reside on the sixty acres in order to hold it by twenty-one years' adverse possession; if he designated his boundaries, cleared, cultivated, and farmed the land for twenty-one years according to the usual course of husbandry, it was not necessary for him to live upon the sixty acres so as to hold by the statute of limitations.

"If Lewis had occupied the sixty acres previous to November 1823, when he agreed to purchase the one hundred acres, and continued afterwards to clear, cultivate, and occupy it twenty-one years, the purchase of the one hundred acres would not prevent him from holding the sixty acres by the statute of limitations."

The jury found a verdict for the plaintiffs for all the land in the writ mentioned, except the Schoonover tract, &c. Judgment.

In this court the plaintiff in error assigned the following errors:—

1. The court erred in taking the facts from the jury in regard

to the entry of plaintiffs upon the land in dispute, and deciding upon them themselves.

2. The court erred in instructing the jury, that the facts proved by Goodspeed and Metcalf were not sufficient in law to destroy the effect of the adverse possession of defendant under the statute of limitations.

3. The court erred in charging the jury that the contract of 22d November, 1823, by defendant, for the purchase of 100 acres, part of the land in his possession, did not prevent the defendant from holding the 60 acres by the statute of limitations.

*Elwell* and *Overton*, for the plaintiff in error.—1. The withdrawal of material facts from the jury is error: Newbold *v.* Wright, 4 R. 195; Baker *v.* Lewis, Ib. 356. And it is error in a judge to give a legal interpretation to the words of a witness, or say whether in point of law they sustain the allegation of fact: Simpson *v.* M'Beth, 4 W. 409.

2. When an entry upon and survey of land is made, if the fact be clear and undisputed, that such acts were done *animo clamandi*, it is the duty of the court to charge the jury that such entry operates as a bar against the statute of limitations; if the intent with which the entry was made be doubtful, the question of intention is for the jury: Miller *v.* Shaw, 7 S. & R. 129.

3. By the entry of Goodspeed for the plaintiffs, in 1834, they were repossessed of every part of their survey, and the defendant's possession was suspended: Littleton, § 417; Miller *v.* Shaw, *ut suprà*. An entry by the owner on any part of his land within the bounds of his own survey, is an ouster of the adverse claimant, as well of the part actually occupied, as of that in constructive possession merely: Altemus *v.* Long, 4 Barr, 254; Hinman *v.* Cranmer, decided at Sunbury, July 1848. An entry upon the land claimed, not a mere *casual* entry, but an entry *animo clamandi*, will defeat the statute of limitations: Hughes *v.* Thomas, 12 East, 186; Doe *v.* Hicks, 7 T. R. 433.

*Cone,* contrà.

The opinion of this court was delivered by

ROGERS, J.—This is an action of ejectment to recover possession of a tract of land, containing about two hundred acres, now in the possession of the defendant. The tract in controversy is part of a warrant in the name of Thomas Willing, containing by survey

about one thousand and ninety-nine acres. To the whole tract, No. 1835, the plaintiff has shown a clear and indisputable title.

The defendant admits the plaintiff's title, and puts his defence exclusively on the act of limitation; proving, as he contends, a notorious adverse possession in himself, and those under whom he claims, of more than twenty-one years before the commencement of the action.

In avoidance of the defence, the plaintiff insists that such an entry was made on the premises as bars the running of the act; and secondly, that the agreement of the 22d November, 1823, signed by Lorentus Jackson, agent of Doctor Rose, who was the agent of the trustees, and the defendant, is such a recognition and admission of the plaintiff's title as tolls the statute.

The first point is based on the uncontroverted testimony of Messrs. Goodspeed and Metcalf. This evidence, admitting its truth, the court rule peremptorily not sufficient to destroy the effect of the defendant's adverse possession. From this direction we entirely dissent; for, granting the facts to be as stated, we think they toll the statute. An entry on land, as is ruled in Altemus *v.* Campbell, 9 W. 28, avoids the operation of the act of limitation, if accompanied by an explicit declaration, or an act of notorious dominion, by which the claimant challenges the right of the occupant. So where a person enters *animo clamandi*, as where he enters and surveys the land, it operates as a bar to the act of limitation; and where the intent with which the entries are made is doubtful, the question of intention must be submitted to the jury: Miller *v.* Shaw, 7 S. & R. 129. The learned judge admits the principle ruled in Altemus *v.* Campbell, but denies that there is such an explicit declaration, such an act of notorious dominion as brings the case within the principle there decided. He instructs the jury as a matter of law, that the entry, as testified to by the witnesses named, did not toll the statute, a charge which, with all respect, is in direct opposition to Miller *v.* Shaw, as above cited. Goodspeed and Metcalf, whose testimony is incontestable, prove unequivocally, that in April 1834, Goodspeed, as the agent of the plaintiff, surveyed the whole of the land now in controversy, including not only the old lot, as it is called, on which Lewis resided, but also the Schoonover lot, lying north of the old lot, and running to the New York line; and further, that the surveys were made with the knowledge, and, if Metcalf is believed (and there is no reason to doubt his testimony), with the assent and concurrence of Lewis. In view of these facts, if believed by the jury, the plaintiff had a

right to claim a binding direction that they toll the statute. There was an actual entry on the land, by the agent of the owner, with the avowed object of claiming the land, accompanied with an unequivocal act of dominion or ownership, by making the survey with the knowledge and assent of the person in possession. It is a stronger case than Miller *v.* Shaw, for here we are not left in doubt that the person making the survey was the agent of the owner. He enters *animo clamandi*, which tolls the statute, as is there ruled.

We agree with the court, as far as they go, as to the effect of the agreement of the 22d November, 1823, between Robert H. Rose, as attorney of the devisees of William Bingham, and the defendant. The court decide, that it tolls the act as to the 104 acres purchased by Lewis, but that it is no recognition or admission of the plaintiff's title to the remainder of the tract, including the 62 acres adjoining the New York line. It must be remembered that it is conceded, that the plaintiffs had a clear and indisputable title at the time of the contract to all the land embraced in the warrant No. 1835, warranted and surveyed in the name of Thomas M. Willing, which includes not only the Baker lot but the Schoonover lot also. Now what is the meaning of the sentence in the latter clause of the agreement, which, after reciting the purchase of the 104 acres, concludes with the words " being a part of No. 1835 ?" For what purpose were they introduced ? Is it not, and was it not intended as an express admission, that the 104 acre lot was part and parcel of the warrant No. 1835, of which the plaintiff was the uncontested owner ? Is it not a clear recognition of title to all the land embraced in that warrant ? If so, there is an end to the defence ; for, after admitting the title, he shall not afterwards be permitted to dispute it, so as to give title to himself by the act of limitation, for that would enable the defendant to commit fraud by putting the plaintiff off his guard. With such an agreement as this in his hands, would it ever enter the mind of the plaintiff, that after purchasing part of the tract, he would attempt to toll the remainder by virtue of an adverse hostile possession. If Lewis, at the time of the contract, knew that the plaintiff was the owner of all the land included in the warrant, it was his duty to state openly and explicitly, that as to the warrant he held adversely. But, instead of pursuing this honest course, he signs the agreement, the evident effect of which was to deceive the plaintiff. That the acknowledgment of the owner's title interrupts the running of the statute is ruled in Sailor *v.* Hertzog, 2 Barr,

184, in Criswell *v.* Altemus, 7 Watts, 581, and in other cases which might be cited. Mr. Justice Kennedy says, in Criswell *v.* Altemus, that it is sufficient to prevent the possession from being adverse, that the party taking possession intends to occupy the land subject to the *will* of the owner; and that if this be made to appear clearly by the evidence, the statute of limitations will form no bar to the owner's possession, whenever he demands it.

And in Sailor *v.* Hertzog, the Chief Justice says, "How can his intention be made to appear by anything else than his declaration, which has always been received, as evidence of the nature of an occupant's possession?" Here we have a written recognition of the plaintiff's title, which tolls the statute.

Judgment reversed, and a *venire de novo* awarded.