## CHARLESTOWN.

HARRIS *v.* HAUSER, *et al.*

Submitted June 17, 1885.—Decided September 26, 1885.

B. is in the possession of lumber cut from A's land. B. sawed this lumber and bestowed other labor on it and under contract between them he claims a right to hold possession of this timber and sell it and out of the proceeds retain what is due him for his labor bestowed thereon. A. claims that B. has no right to ship this lumber in his own name but only in A's name; and that for what he may owe B. on account of his sawing of this lumber and other labor bestowed thereon B. has no remedy except by a common law suit, having under their contract no lien upon the lumber. A. brings a chancery suit against B. enjoining him from collecting certain moneys for a portion of this lumber shipped by B. in his own name and sold by him, as A. claims, improperly and to prohibit him from selling any more. The court at the instance of B. orders a receiver of the court to take possession of the lumber then in B's possession and unsold and sell the same and bring the money into court, at the same time ordering a settlement of the accounts between the parties, but settling none of the principles of the cause. HELD:

> This is not such an order, as A. can appeal from and thus get a decision on the merits of the cause, before it has been adjudicated in the court below, as such order is, so far as A. is concerned, not an order changing the possession of property. (p. 600.)

GREEN, JUDGE, furnishes the following statement of the case :

Thomas A. Harris owned a tract of land in Ritchie county on the Parkersburg branch of the Baltimore & Ohio Railroad and on September 7, 1882, he entered into the following contract with J. M. Hauser in reference to timber on said land :

" This contract, made on September 7, 1882, between Thomas A. Harris, of the city of Parkersburg, county of Wood, and State of West Virginia of the first part, and J. M. Hauser, of Thornton, Taylor county, and State aforesaid, of the second part, witnesseth :

" That in consideration of the payments hereinafter specified to be made by the said party of the first part to the said party of the second part, the said Hauser hereby covenants

and agrees to and with the said Harris that he, the said Hauser, will furnish saw-mill and attachments on the land of the said Harris, near Silver Run Tunnel, on the line of the Parkersburg Branch Railroad, will superintend the logging of all timber cut on said land by said Harris under contracts said Harris has therefor with others, and that said logging and cutting is done for said Harris under said contract to the best advantage and interest of the said Harris, and at the lowest and cheapest rate; shall saw all timber on said land at his own expense to the best advantage; shall paint the ends of all pieces that become necessary, and deliver the said lumber so sawed by him free on board the cars at Silver Run Tunnel, on the line of said railroad; that he will take charge of and superintend the laying of a tram-road from the place where the mill may be located to the above named point of shipment on said railroad, and shall without charge saw all lumber necessary or required to make said tram-road; that said Harris shall have the benefit of all contracts for sale and delivery of lumber now made by said Hauser with any person or corporation, and hereby transfers, assigns and sets over the right of said contracts to said Harris, the said Hauser to receive and be paid for sawing said lumber, except said tram-road lumber, and delivering at said railroad, the sum of $6.00 per thousand feet, and in addition thereto for superintending as aforesaid and giving a general management and superintendence to said timber before and after the same is cut, logged, sawed and delivered as aforesaid and sold and consigned, the sum of $50.00 per month, the payment of which sum shall be made only on the receipt of money for lumber sold and not otherwise, and shall not be demanded or required except from money derived from sales of lumber. And said Harris hereby covenants and agrees with said Hauser that he, the said Harris, will make the payments for sawing and delivering lumber and superintendence as aforesaid in the manner and form aforesaid; that said Hauser shall have the right to leave his said saw mill on said land after said Harris' timber is sawed and delivered as aforesaid, and run the same in sawing timber for other persons if he so desires, without any rent or charge, and to remove the same at such time after said Harris' timber is sawed as he may

choose, and shall have the use of said tram-road as may be necessary in executing contracts with other persons than said Harris.

" Witness the following signatures and seals.

"(Signed)           T. A. HARRIS.    [SEAL.]
"       "             J. M. HAUSER.    [SEAL.]"

Under this contract Hauser went upon the land and super-intended the logging of the timber cut thereon by Harris and saw to the cutting thereof to the best advantage and sawed it with a saw-mill on the premises furnished by Hauser but owned by his wife. A part of this timber was shipped in his own name to various parties at different times, among whom was Bew, Spencer & Co., of Baltimore City, Maryland. This was done in Hauser's name against the protest of Harris, who claimed, that under this contract it was his timber and ought to be shipped in his name and not in the name of Hauser. The amount so shipped to this Baltimore firm netted when sold $523.92, which sum Harris notified Bew, Spencer & Co. not to pay to Hauser and also notified Hauser not to collect the same. The construction placed on this contract by Hauser was that he remained the sole owner of this lumber, and Harris's control over it ceased and determined, when he de-livered it on board the cars at Silver Run Tunnel, and that Hauser had no right to ship it or any part of it in his own name, as none of it belonged to him; that he had no right to sell it or to receive any money arising from its sale. But though notified of this Bew, Spencer & Co. refused to pay to Harris this $523.92, and Hauser refused to direct it to be paid to Harris. On the contrary Harris claimed, that under this contract he had a right to receive this money himself, and he urged the Baltimore firm to pay it to him.

This being the state of the case, on January 27, 1885, a bill was presented to the circuit court of Ritchie county by Thomas A. Harris against J. M. Hauser and Bew, Spencer & Co. setting out the above facts and stating, that when this contract was made he was led to believe, that Hauser owned this saw-mill and was a man of means, which was untrue, this saw-mill being owned by his wife and Hauser having no means of large amount and being virtually insolvent. The bill prayed an injunction enjoining him among other things

from collecting said money and asking that Bew, Spencer & Co. may be directed to pay this money to him, and that Hauser be enjoined from selling more lumber in his own name, and asking for general relief. The bill was sworn to, and the injunction prayed for was granted.

On October 19, 1883, the court entered a decree reciting that Hauser in open court admitted that Bew, Spencer & Co. had in their hands $552.92 the net proceeds of the lumber; and that Hauser agreed, that it might be paid into court to the clerk, as there was no general receiver; and thereupon the court ordered that this should be done and the money should be loaned out by the clerk as a special receiver on good personal security till the next term of the court, when he should have it in hand subject to the order of the court.

Hauser filed an answer, which was excepted to and the exception overruled. None of the allegations of the bill were denied in the answer, except Hauser said, that he was not virtually insolvent but on the contrary, if the plaintiff would pay him, what he owed him under this contract, he could pay all his debts; and he claims this debt due him was at least $2,500.00, and files with his answer long statements to show how the accounts between him and the plaintiff stood. The answer then concludes as follows:

"Defendant, as new matter, charges, that since the service of the injunction upon him, at the special instance and request of the said Harris, the defendant has shipped in the neigborhood of 100,000 feet of lumber in the said Harris' name, and by his orders, in the name John Wait, and the said Harris, or Harris and Wait, have received all the proceeds of the sales thereof, and neither of them has rendered to the defendant any account thereof. And as additional new matter, the defendant says that he has been informed and believes, and on said information and belief, charges that the said Harris is wholly insolvent; and as far as advised, this defendant will lose his entire claim unless he is permitted to retain the same out of the proceeds of the sales of the lumber now on hand and ready for shipment.

"Your respondent therefore prays that said Harris be required to answer the new matters herein contained fully upon oath, and that he be restrained by order of this court from

making sale or disposing of said lumber. And to the end that justice and equity may be done in the premises, defendant prays that this cause may be referred to a commissioner to make, take and state an account of all matters between plaintiff and defendant growing out of said contract, showing what is due to this defendant upon a full settlement of all such matters.

"The further prayer of defendant is that a receiver be appointed by this court to take charge of all lumber undisposed of, to make sale of the same, and return the proceeds thereof here into court. And the defendant prays for such other, further and general relief as to fairness and equity appertains. And as in duty bound, &c., &c."

This answer was sworn to.

The three last exceptions to this answer are stated below as showing the nature of the controversy in the court below:

"Seventh.—That a court of equity has no jurisdiction to take cognizance of and settle such accounts as are in said answer mentioned and to take away the right of trial by jury.

"Eighth.—That there is no jurisdiction in a court of equity to deprive the plaintiff of his absolute property in and dominion over the said 175,000 feet of lumber in order that a pretended creditor, without having attached or availed himself of his legal remedies, may secure his debt and none of the relations existing entitling him to such relief.

"Ninth.—That this is not a case in which a receiver can or should be appointed to take charge of property; there is no notice or jurisdiction to appoint one, and a mere *exparte* affidavit of injury to property not belonging in any way or manner to the applicant to have a receiver appointed is not sufficient to found such application."

A special replication was offered to the new matter above stated contained in this answer, and the court refused to permit such special replication to be filed. An affidavit was made by Hauser, the substance of which was stated in the order of March 7, 1884, which was as follows:

"The complainant this day tendered his general replication to the defendant's answer, which is ordered to be filed, and the complainant also tendered his special replication to

said answer, which is excepted to; and the exception being considered by the court is sustained, and the said special replication is disallowed. And this cause came on further to be heard upon the papers formerly read herein, and it appearing that no proper or final decree can be rendered in this cause at this time, and that it is necessary to a correct determination of the matters involved in this cause that an account should be taken and stated between the parties, it is ordered that this cause be referred to J. W. Dunnington, Esq., one of the commissioners of this court, to take, state and audit the accounts between the parties, Harris and Hauser, and make report thereof at the next term of this court; and it further appearing to the court by affidavit filed in the papers of this cause that the timber mentioned at and near Silver Run Tunnel in Ritchie county, and mentioned in the proceeding, is, for want of attention, fast deteriorating in value, is liable to further injury, loss and destruction, on motion of the defendant it is ordered that W. B. Hawkins be and he is hereby appointed a special receiver to take possession of said lumber and make sale thereof to the best advantage and for the best prices he can, and make report of his action hereunder to the next term of this court, and bring the proceeds arising from such sales into court; but before acting under this appointment, said special receiver is required to enter into bond in the penalty of $1,000.00 conditioned according to law."

Depositions were taken in reference to the state of these accounts between the plaintiff and defendant, but they were in no way acted upon by the court.

The plaintiff obtained an appeal and *supersedeas* to the various orders made by the circuit court in this cause above referred to.

*Van Winkle & Ambler* for appellant.

*G. Loomis* for appellee.

GREEN, JUDGE:

The statement of this case shows the character of the controversy involved in the cause; and it also shows, that the court below has entered no final decree in the cause, nor

adjudicated any one principle involved in the cause, nor dissolved nor refused to dissolve the injunction, which has been awarded, nor entered any decree requiring money to be paid or real estate to be sold.   There can therefore be no pretence for this Court to take jurisdiction to review any action, which the court below has taken, as none of these actions of the court below can possibly constitute a ground for an appeal under ch. 157 sec. 1 of Acts of 1882, unless the last decree of the court could be regarded as "requiring the possession or title of the property to be changed" which is one of the grounds named in the seventh subdivision of said section as constituting a ground for an appeal.   I am by no means satisfied, that the statute by the words "the possession or title of the property to be changed" does not mean the title or possession of real estate to be changed ; for just before using these words it had spoken of *real* estate to be sold.   But if for the sake of argument I admit that this phrase in the statute means "the possession or title of property real or personal to be changed," it would still seem to me clear, that in this case this Court could not take jurisdiction under the statute.   The property spoken of in this order is the lumber named in the affidavit.   Now there is no question, but that this lumber was legally in the possession of Hauser, when the order was made.   There is a dispute as to the time, when Hauser's possession and control of the lumber under the contract between the parties ceased.   But it is clear on the face of the contract and is not and could not be disputed by the plaintiff, that Hauser's possession and control did not cease, till the said lumber was placed upon the cars at Silver Run Tunnel, though the title to said lumber is claimed by the plaintiff to have been in him at all times both prior to and after its being thus placed on the cars.   This is the language of the bill on that subject :

"Your orator avers and charges that he, your orator, was the sole owner of said lumber sawed under said contract, that said Hauser's duties and control over said lumber ceased and determined when he delivered and placed said lumber free on board the cars at said Silver Run Tunnel."

As this lumber had not been thus placed upon the cars, when this last order was made directing W. B. Hawkins as receiver to

take possession of it and make sale thereof, it is obvious, that Hauser was in the possession of it; and he not only consented to but asked this order to be made. Of course he could not complain of it. Harris the plaintiff can not appeal from it, because this order does not change his possession of this property he having never had any possession of it. It matters not then how liberal our construction of this section of the act conferring the right of appeal to this Court may be, it can not confer the right on the plaintiff, Harris, who was not deprived of the possession of any property by this or by any other order of the court below.

The truth is obvious, that the plaintiff, Harris, insisted, that under the proper construction of the contract of September 7, 1882, and the admitted facts he was entitled to an order or decree directing the $523.92, which was or had been in the hands of Bew, Spencer & Co., to be paid over to him without any ascertainment of the balance which might be due to Hauser for his services. The court without determining, whether he had this right or not, and without settling the principles of the cause thought proper to refer the cause to a commissioner to take and settle an account between the parties. It may well be, that this commissioner's report may show, that the plaintiff is entitled to the whole of this $523.92, as would be the case beyond controversy, if it turned out, that he was not indebted to the defendant Hauser, and for anything I say now, it may be he is entitled to it in any event, as he claims. But until the court below has decided this point and adjudged the principles of the cause, this Court is clearly not entitled to take jurisdiction. And it is not for us in this stage of the cause to say, whether the court below erred in overruling the exceptions to the special replication or in appointing a receiver. Though all these orders were such as ought not to have been made, as claimed by appellant's counsel, they could not in the present state of the case be by us reviewed or altered.

We are an Appellate Court, whose business it is to review the decrees of the circuit courts, when the cause is substantially ended in those courts. It was never designed or intended, that this Court should take supervision of the circuit courts during the progress of the causes, and, if they

failed to adjudge the principles of the cause, when one of the parties to the suit thought, that such principles might and ought to be adjudicated, or if they made mistakes during the progress of the causes, interpose and correct such errors and adjudicate the principles of the cause, before the court below had decided them. This would not be appellate jurisdiction; and if such duties were by law imposed upon this Court, it would be simply impossible to perform them. It is as much as can be done by this Court, to decide all the causes in this State, in which the courts below may have erred in their final judgment or decree or in adjudicating the principles of the cause. We could not possibly supervise all these courts during the progress of the suits before them; for in so doing it would doubtless often happen, that fully a dozen appeals would be taken at different times in the same cause.

I am therefore of opinion, that the appeal and *supersedeas* were improvidently awarded, and that the appeal must be dismissed, and the appellee, J. M. Hauser, recover of the appellant, Thomas A. Harris, his costs in this Court expended

DISMISSED.