# CHARLESTON.

HUTTON *v.* LOCKRIDGE.

Submitted January 15, 1886.—Decided February 6, 1886.

*(SNYDER, JUDGE, Absent.)

1. In a chancery suit brought to enforce the judgment-liens on a debtor's land, where a decree for the sale of the land is rendered, and an appeal and *supersedeas* to such decree is granted, the obligors in the appeal and *supersedeas*-bond are not responsible, where the decree below is affirmed, and the lands sell for a sum insufficient to pay the judgment-liens, for any portion of the rents and profits of such lands, while the cause was pending in the Appellate Court, or for any loss which the appellees may have sustained by reason of the receipt of such rents and profits by the debtor, while the cause was pending in the Appellate Court, instead of the sum being applied to the payment of such liens. (p. 434.)

2. But in such a case the circuit court may, to preserve the rents and profits in a proper case, appoint a receiver, notwithstanding the case is pending in the Supreme Court of Appeals upon a *supersedeas.* (p. 433.)

3. But no such receiver of real estate or of the rents and profits thereof in such case or in any other case can be appointed, until reasonable notice of the application therefor has been given to the owner or tenant of the lands. (p. 434.)

*Counsel below.

4. From an order of a circuit court improperly appointing such a re-
    ceiver of lands and thus requiring a change of its possession the
    owner of the lands so dispossessed of may appeal, though the
    principles of the case be not decided.   (p. 435.)

*Dennis & Dennis* for appellant.

*A. F. Mathews* for appellees.

Statement by GREEN, JUDGE :

This was a creditors' suit brought in circuit court of Poca-
hontas county in September, 1877, to subject the real estate
of James T. Lockridge to the payment of judgment-liens
and liens by deed of trust on the whole or some portions of
such real estate.   The bill on its face showed, that there were
a large number of creditors, who had liens on the whole or
some portion of this real estate ; and it also showed that
Lockridge had no personal estate, which could be subjected
to the payment of these debts, executions, which had issued
on sundry of these judgments against Lockridge, having
been returned "No property found."   During the progress
of the cause it was twice referred to a commissioner to ascer-
tain the amount and priority of these liens, and what lands
were owned by Lockridge, on which these were liens ; re-
ports were made by the commissioner and sundry excep-
tions filed to them.   On October 3, 1878, the court declining
then to act on the exceptions to the first report re-committed
the cause to the commissioner with instructions to take such
competent testimony, as might be produced, touching the
points raised by these exceptions, and to re-form his report
accordingly ; and at the same time the court decided, that
this first report showed, that there were many liens against
the lands of Lockridge, which were not denied or contra-
dicted by him, and that his lands should be sequestered and
rented out for these lien-creditors ; and thereupon it decreed,
that two commissioners named in this decree after giving the
bond and security required by the decree, should rent out
said lands for one year from March 1, 1879.   Under this de-
cree the commissioner of the court on April 28, 1879, made
his report showing, that the judgment and deed of trust liens
on the lands of Lockridge, including interest and costs to
April 29, 1879, amounted to $17,063.75.   Lockridge filed

exceptions to this report, not because any of these judgments, the auditing of which were excepted to, had been paid, but because for reasons assigned it was inequitable to enforce these liens against his land ; but by the decree of the court rendered in this cause and in two others heard with it on April 29, 1879, the court overruled all the exceptions and confirmed the report in all respects and decreed, that unless the defendant, Lockridge, or some one for him should within thirty days pay the debts audited in the report, the priorities of which were settled by the report and this decree, certain commissioners named after a specified advertisement should sell at a named place these lands in the bill and proceedings named then owned by James F. Lockridge and report their proceedings to the court, but before receiving any money under this decree these commissioners or the one acting were to execute bond with good security before the clerk of the court, in the penalty of $30,000.00, conditioned according to law.

An appeal and *supersedeas* was allowed to this decree on September 8, 1879, and while this appeal was pending in this Court, on October 16, 1882, the circuit court of Pocahontas county rendered the following decree :

"This cause came on this day to be further heard upon the papers formerly read, and the rule awarded against the special commissioners Robert F. Dennis and Alexander F. Mathews, to show cause why they had not executed the decree of October term, 1878, and the answer of said special commissioners to said rule, and argument of counsel ; and it appearing to the court that the real estate of said defendant Lockridge will not sell for enough to pay the undisputed indebtedness of said defendant Lockridge, and that said lands should be sequestered and rented out for the benefit of the creditors of said Lockridge, Robert F. Dennis and Alexander F. Mathews, special commissioners appointed for the purpose of renting said lands by the decree made in this cause at the October term, 1878, of this court, having failed to act, and asking to be relieved, it is therefore adjudged, ordered and decreed by the court that said commissioners be and are hereby relieved. And it is further adjudged, ordered and decreed that John Osborne, who is hereby appointed a special receiver for the purpose, shall, after advertising for four weeks in the

*Greenbrier Independent*, a newspaper published in the town of Lewisburg, Greenbrier county, West Virginia, and by posting a copy of this order on the front door of the court house of this county, proceed to rent out all the lands of the defendant Lockridge in the commissioners' report No. 2, in this cause mentioned and described, for one year from March 1, 1883, for so much to be paid cash in hand as may be necessary to pay the costs of said renting, and as to the balance upon a credit of twelve months, and take from the rentee or rentees bonds, with approved personal security, for the deferred payment or payments, and report his proceedings under this decree to the next term of this court, but before acting under this decree, said special receiver shall execute and file with the clerk of this court a bond, with sufficient security, to be approved by said clerk, in the penalty of $1,000.00 conditioned according to law. But this decree shall not affect in any way growing crops of wheat now seeded upon said lands, and the clerk of this court is directed to issue writs of *habere facias possessionem* to put said rentor or renters in possession of said lands."

From this decree an appeal and *supersedeas* was granted December 9, 1882.

To the proper understanding of the merits of this decree a somewhat fuller statement of the facts appearing in the cause, which was pending in this Court, when the decree of October 16, 1882, was rendered by the circuit court of Pocahontas, must be made. A very full statement of the cause is made by Judge Woods in rendering the opinion of this Court in that cause. This statement may be found in 22 W. Va. pp. 162–178. It is not necessary to make such a full statement as is therein contained, but it will suffice to add to the statements I have made above a few facts taken therefrom or from the record of said cause, which is now before us. If any one should desire a fuller or more detailed account of the proceedings in this cause to which we have referred, it can be found in 21 W. Va. p. 162 *et seq.*

The only additional matters deemed necessary to be stated are, that report No. 2, which ascertained the priorities of the debts and showed their aggregate to be $17,063.75, with interest from April 29, 1879, also showed that these debts were

liens on the whole or a portion of the lands then owned by Lockridge, and that he then owned what was known as the home-farm in Pocahontas county on the waters of Knapp creek containing 420 acres assessed at $26.00 per acre, or $10,920.00; that he also owned wild lands in said county in numerous tracts or parcels, in one of which, a tract of 2,000 acres on Elk river, he owned an undivided moiety. If we regard this as the ownership of 1,000 acres, all these wild lands in Pocahontas county owned by James F. Lockridge would together amount to 2,603¾ acres, assessed in all at $2,372.25, or less than $1.00 per acre on an average. Thus it appears from this report, that to pay these lien-debts, aggregating $17,063.75, Lockridge owned lands, which in the aggregate were assessed at $13,292.24; and that when the decree now appealed from was made ordering these lands to be sequestered and rented out, these lien-debts with the accumulated interest amounted to over $20,000.00. So that had this Court confirmed the decree of the circuit court of Pocahontas of April 29, 1879, and had the lands not sold for more than their assessed value they would not have paid the debts, which were liens upon them, by some $7,000, had the sale been made October 16, 1882, and if the lands had not been rented out, this deficiency would have constantly increased, while the cause was pending in the Appellate Court, as the debts all bore interest and were thus increased about $1,000.00 each year.

Opinion by GREEN, JUDGE:

In the case of *Grantham* v. *Lucas, Trustee, et al,* 15 W. Va. 431, it was decided by this Court, that "pending a chancery suit to subject the debtor's real estate to the discharge of liens upon it, a court has a discretion to sequester the rents and profits of such real estate and appoint a receiver for the same, which discretion is reviewable in an appellate court, and when the debtor has no personal estate (as appears from the the bill in this cause), and the cause has been referred to a commissioner to report the liens upon the real estate and their priorities, and to ascertain what real estate the debtor owns, and the value thereof, and a report is made in the cause, showing the value of the real estate and the amount

of the liens, and no exception is made to the reports as to the value of the real estate, as therein ascertained, and the report is excepted to because further credits are claimed by the debtor not allowed by the commissioner, and it appears from the report, that if the credits were allowed the liens would still exceed the value of the property, although the report is not confirmed, the court may properly appoint a receiver to take charge of the estate and to receive the rents, or rent the same; as, when it appears to be necessary to sequester the rents and profits to meet a deficiency in the sale, justice to the creditors requires that the property should be taken out of the debtor's possession and the rents and profits sequestered."

In *Beard* v. *Arbuckle, et al*, 19 W. Va. 145, this Court decided that in such a case upon the petition of creditors a circuit court might appoint such receiver, notwithstanding there had been a decree for a sale of the debtor's land, which had been suspended by an appeal and *supresedeas*, which was still pending in the Supreme Court of Appeals. This order to rent out the real estate and this appointment of a special receiver to receive and preserve the rents and profits were made in the case of *Grantham* v. *Lucas, trustee, et al*, without any notice to the debtor, that an application for the appointment of such receiver would be made. Nothing was said in the case about the necessity or propriety of giving such notice; it seemed to be assumed, that in a case of this character such notice was unnecessary, though the law was well settled, that generally, where a receiver is asked to be appointed in a chancery cause, the court requires such notice to be given, and, as we will see presently, such notice is now required by statute-law in every case, in which a receiver of real estate is to be appointed, while in *Beard* v. *Arbuckle* it was not decided, whether such notice was or was not absolutely necessary, where the application for the appointment of such receiver was made to the circuit court, while the cause was pending in the Supreme Court of Appeals. That in such case such notice was always absolutely necessary is insisted on by the counsel for the appellant. It is unnecessary for us to determine what was formerly the law in this respect, as it was settled by sec. 28, ch. 133 of the Code of West

Virginia as amended by ch. 78 of the Acts of 1882, p. 179. (See Warth's Code, ch. 133, sec. 28 p. 742.) The language of the amendment is :

"But no receiver shall be appointed of any real estate, or of the rents, issues and profits thereof until reasonable notice of the application therefor has been given to the owner or tenant thereof."

This was a new provision inserted in our statute law after the decision of *Grantham* v. *Lucas, trustee et al.*, 15 W. Va. 425. The statute, in which this provision was inserted, was passed March 15, 1882, and went into effect on June 13, 1882, which was more than four months before the decree appealed from in this cause was rendered. A special receiver of the rents and profits of the lands of the appellant having been appointed by this decree without any notice of the application therefor having been given to the appellant or to his tenant, as expressly required by this statute, this decree must be reversed, and the appellant must recover of the appellee his costs in this suit expended, though had such notice been given, it seems to me, upon the principles laid down in the two West Virginia cases, which we have cited, the decrees would have been affirmed, unless the appellant had shown before the rendition of the decree below, that there had been a material change in the case since the last report of the commissioner was made either by the advancement in the value of his lands or by a diminution of the liens upon them as set forth in the commissioner's report approved by the decree of the circuit court of April 29, 1879.

With reference to this case of *Beard* v. *Arbuckle et al*, 19 W. Va. 145, I would here say, in order that the profession may not be mislead by it, that in that case Judge Johnson, who pronounced the opinion of the Court, based his conclusions in part on the fact, as he understood, that an apppeal and *supersedeas*-bond in such a case would not render the obligors in it liable to make good to the creditors any loss they might sustain by reason of this debtor receiving rents and profits, while the cause was pending in the Appellate Court. I said : "I was not prepared to say, whether the *supersedeas*-bond covers in such a case the rents and profits or not; and that I did not deem it necessary in

that case to decide the question." Shortly after that case was decided, the question was presented directly to this Court in a manner, which made it necessary for us to decide it. It was an application to increase the penalty of a *supersedeas*-bond in such a case, because it was insufficient to cover the rents and profits of the appellant's land, while the cause was pending in this Court, and that the lien-creditors in that case must lose a portion of their debts, because the lands of the appellant were not sufficient in value to pay them. After a careful examination of the subject I concurred with all the other members of the Court, that in such a case the *supersedeas*-bond would not cover the loss occasioned by the rents and profits being reserved by the debtor during the pendency of the appeal and *supersedeas* in this Court. We therefore declined in that case to increase the penalty of the *supersedeas*-bond. Since then this Court in fixing the penalty of the *supersedeas*-bond in such cases has always acted on this principle. As the action of this Court in none of these cases has been reported I deem it proper here to state what has been and is the opinion of this Court on this subject.

In *Harris* v. *Hauser*, 26 W. Va. 601, speaking of the appointment of a special receiver of personal property, I said, that I thought it questionable whether the order of a circuit court appointing a receiver of personal property could be appealed from; as it could be appealed from under ch. 157, sec. 1 of Acts of 1882 only as "requiring the possession or title of the property to be changed," a ground for an appeal named in the seventh paragraph of said section. And I was by no means satisfied that the statute by the words, "the possession or title of the property to be changed" did not mean the title or possession of real estate to be changed, for just before using these words it had spoken of *real* estate to be sold." But from that case as well as from the case of *Beard* v. *Arbuckle et al,* 19 W. Va. 142, and *Grantham* v. *Lucas, trustee, et al*, 15 W. Va. 428, it is apparent, that an appeal lies from such an order as was appealed from in this case on behalf of the debtors, as it required the possession of real property to be changed.

For the reasons hereinbefore assigned the decree of October 16, 1882 must be set aside, reversed and annulled and the appellant must recover his costs in this Court.

REVERSED.