### Graham H. Harris v. The People of the State of Illinois.

1. DECREES—*Suspended by Appeals.*—When an appeal from a decree dissolving a corporation and appointing a receiver, is perfected, such appeal becomes in effect a supersedeas and operates as a stay of all proceedings to enforce the execution of such decree, leaving the matters in the condition in which they were when the appeal was perfected, and such is the case without reference to the sufficiency or insufficiency of the appeal bond.

**Bill for a Receiver.**—Appeal from the Circuit Court of Cook County; the Hon. JOHN GIBBONS, Judge, presiding. Heard in this court at the March term, 1896. Reversed. Opinion filed June 19, 1896.

#### STATEMENT OF THE CASE.

This proceeding was instituted by the attorney-general of the State of Illinois, under section 17 of the act entitled "An act to amend an act entitled 'An act to enable associations of persons to become a body corporate to raise funds to be loaned only among the members of such associations,' in force July 1, 1879, and as amended by an act approved June 17, 1887, in force July 1, 1887, by adding

thereto certain sections to be numbered 15, 16, 17 and 18," which amendatory act was approved June 16, 1891, and in force July 1, 1891, and was itself amended by an act entitled "An act to amend sections 3, 15, 16 and 17 of an act entitled ' An act to enable associations of persons to become a body·corporate to raise funds to be loaned only among members of such associations,' in force July 1, 1879, and as amended by an act approved June 17, 1887, in force July 1, 1887, and as further amended by an act approved June 19, 1891, and in force July 1, 1891," which last amendatory act was approved June 19, 1893, and in force July 1, 1893.

Section 17 of the act of 1891 is as follows:

" And whenever it shall appear to the said auditor that said allegations in said statements of facts contained have been sustained by such examination, and that the assets of any such association incorporated or doing business in this State are insufficient to justify the continuance of business of such association, he shall communicate the fact to the directors of such association. Such directors shall be allowed sixty days within which to make the assets sufficient, and in case such assets are not made sufficient within the time herein provided, then the auditor shall report the same to the attorney-general, whose duty it shall then become to apply to the Circuit Court of the county in which the principal office of said association shall be located, for an order requiring it to show cause why the business of such association shall not be closed, and the court shall thereupon proceed to hear the allegations and proofs of the respective parties, either in open court or upon a reference to a master in chancery; and in case it shall appear to the satisfaction of said court that the assets and funds of said association are not sufficient, as aforesaid, the court shall decree a dissolution of the said association and distribution of its assets."

By the act of June 19, 1893, the above quoted section is amended so as to read as follows:

" And whenever it shall appear to said auditor that the assets of any such association, incorporated or doing business in this State, are insufficient to justify the continuance

of business of such association, or that it is conducting its business, in whole or in part, contrary to law or in an unsafe manner, he shall communicate the fact by mail, addressed to the president and secretary of such association; the mailing of such notice shall be deemed sufficient evidence and notice; such association shall be allowed sixty days within which to make the assets sufficient, or correct such illegal practices; and, in case such assets are not made sufficient or such illegal practices corrected within the time herein provided, then the auditor shall report the same to the attorney-general, whose duty it shall then become to apply to the Circuit Court of the county in which the principal office of such association may be located, or to any of the judges of said court, in the name of the people of this State, on the relation of said auditor, for an order requiring such association to show cause why the business of such association shall not be closed, or for an injunction restraining such association from doing further business, which application may be made either in term time or in vacation, in the manner now provided for obtaining injunction, except no bond should be required from said auditor in obtaining such injunction. The court shall thereupon proceed to hear the allegations and proofs of the respective parties, either in open court or by reference to a master in chancery; and, in case it shall appear to the satisfaction of said court that the assets and funds of said association are not sufficient, as aforesaid, or that such association has been conducting its business, in whole or in part, contrary to law, the court may decree a dissolution of said association and the distribution of the assets, and may appoint a receiver for such association, with full power to do all acts necessary to close the affairs of such association, and for the proper distribution of its assets."

The bill filed by the attorney-general was against the Continental Investment and Loan Association, of which Graham H. Harris, the appellant, was and is the secretary. To that bill, the Investment and Loan Association filed an answer, and upon the issues thus formed the case was referred to a master for hearing.

Thereafter, on April 8, 1896, the matter came on to be heard upon the report of the master and exceptions of the defendant thereto, and a decree was entered which adjudged a dissolution of the corporation, and ordered:

" That William Fogarty, of the city of Chicago, is hereby appointed receiver to all the property rights and credits, and choses in action of said defendant, and is authorized and empowered to receive and collect all outstanding debts and effects of the defendant, and to recover the same in any proper form of action, and to collect and receipt for any of the assets of said company, and to release by any proper form of conveyance, any mortgage given it upon payment of the amount secured thereby."

From that decree the Continental Investment and Loan Association prayed an appeal to the Supreme Court of the State of Illinois, which was allowed upon its filing within twenty days an appeal bond in the penal sum of $500, and a certificate of evidence within thirty days. On the same day that this decree was entered, the Investment and Loan Association filed its bond in pursuance of the order allowing the appeal, which bond was thereupon approved by the court.

On April 16, 1896, William Fogarty, who was appointed receiver under the above mentioned decree, filed a report stating that he had demanded possession of the assets of the said Continental Investment and Loan Association from Graham H. Harris, secretary of said association, and· that said Harris had refused to ˙deliver possession of said property and assets to him, the said William Fogarty. Thereupon, on April 18, 1896, the court entered an order directing Graham H. Harris, the appellant, to show cause why said property and effects should not be turned over to said William Fogarty, and why he, said Harris, should not be attached for contempt of court.

Thereafter, on April 20, 1896, appellant answered said rule, and therein set up the decree of April 8, 1896, and stated that pursuant to the order allowing the appeal from said decree, said Investment Company did on April 8, 1896, file its bond, which bond was approved by the court.

The matter coming on to be heard upon the rule to show cause, and the answer of Graham H. Harris thereto, the court entered an order finding said Harris guilty of contempt in refusing to turn over the assets of said Continental Investment Company to said Fogarty, and ordering that said Harris be committed to the county jail of Cook county, there to remain until he shall signify to the court that he is willing to comply with its order directing him to turn over its property and assets to said receiver, and further ordered that said Harris be, and is hereby, enjoined from paying out any moneys belonging to said society, and from collecting any moneys due said society, and from transacting any business whatsoever on behalf of said society, and from interfering in any manner with the property and assets of said society, and that he be and is further restrained from acting in any manner on behalf of said society until the further order of this court.

From that order Harris prayed and was allowed an appeal to this court, and that appeal presents the question which this court is now called on to determine.

THOMAS A. MORAN and WILLIAM BRACE, attorneys for appellant.

M. T. MOLONEY, Attorney-General, for appellee; T. J. SCOFIELD, M. L. NEWELL and A. W. O'HARRA, of counsel.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

The question presented on this appeal is whether the appeal by the Continental Loan and Investment Co. from the final decree entered against it suspended the operation of that portion of the decree which appointed William Fogarty receiver of the assets of said company; that is to say, did the appeal suspend the operation of the entire decree, or of only a portion thereof?

If the operation of only a portion of a decree is suspended by an appeal from all of it, the question arises, how one is to determine what that portion is.

We have not here to decide what the effect of an appeal from a final decree would be upon an interlocutory decree appointing a receiver, entered prior to the final decree.

The receiver in this case was appointed by the final decree, and it alone.

Decrees of the chancellor were originally final and conclusive. Before the year 1581, no appeal from his decisions seems to have ever been allowed. As the court of chancery increased in importance and came to be the principal tribunal for deciding questions of property, it became obvious that appeals from its decisions should be allowed, and although the jurisdiction of the House of Lords to hear appeals from the High Court of Chancery and to reverse its decrees was long and warmly contested, so eminent a jurist as Chief Justice Hale, writing an elaborate treatise for the purpose of showing that the House of Lords could not rightfully exercise such a jurisdiction; yet its authority and power in this regard was finally firmly established.

During this contest it was necessary that the House of Lords, for the purpose of sustaining the jurisdiction which it claimed, should prohibit respondents from taking any steps in the court of chancery, in the cause, pending the appeal, whatever injury the appellee might, in consequence, sustain. As appeals were allowed from interlocutory as well as final orders and decrees, and as it was the law of the Appellate Court that the mere presentation of an appeal to the House of Lords suspended all proceedings in the court below, great hardship and much inconvenience to suitors was occasioned by this rule, operating as it did upon all kinds of appeals.

Finally, it was held by the chancellor that his jurisdiction in case of an appeal, was suspended only as to the matter appealed from, and was not suspended so as to prevent a proceeding as to any other matters in the cause. This precedent, followed by other chancellors, was finally firmly established, and by action of the lords themselves. Upon the matter of the petition of Thomas Burke, Esq., and other appellants, against Dominic Browne, Esq., respondent, Lord Walsingham reported from the Lords' committee, appointed to

consider the petition, " that the committee had met and considered the petition, and heard counsel on both sides, and had directed him to report that it appears to the committee that according to very ancient practice in this House, appeals to this House were considered by the House as staying proceedings in the courts of equity, the orders, judgments or decrees of which had been called in question by such appeals; and that such practice, in very remote times, might obtain without much inconvenience in the administration of justice; The committee, however, find that for a very long course of years past, the courts of equity have never forborne to proceed notwithstanding appeals against their orders, decrees or judgments; and with knowledge that such appeals had been lodged in this House, except in cases in which their judicial discretion has induced them, upon the application of parties interested, to stay or modify such proceedings on account of such appeals; and that such habitual practice of the courts of equity hath frequently and repeatedly fallen within the knowledge and under the observation of this House, whilst the appeals were depending therein. The committee, therefore, conceive that, according to the present practice of this House, appeals do not stay proceedings in such courts in the causes in which appeals are made, and that such causes may be proceeded on in the courts of equity, unless such courts should make order thereon to the contrary, in causes in which they may be applied to for that purpose; or unless in special cases this House should interpose by special order, and the committee, attending to the nature of the proceedings in courts of equity, and the numerous appeals, which in each cause may be lodged in this House against the orders and decrees of the court, and the effect which the suspension by appeals of their proceedings must have, are of opinion that the practice as now understood, can not be departed from without introducing consequences the most oppressive to the suitors in courts of equity, and the utmost inconvenience in the administration of justice in such courts."

Which report, being read by the clerk, was agreed to by the House, and resolved accordingly.

The practice of allowing appeals from orders and decrees of the court of chancery, whether interlocutory or final, originally prevailed in the State of New York. The effect of such appeals was considered by Chancellor Kent, in Green v. Winter, 1 Johns. Ch. 77. In that case a decree had been made, allowing the defendant certain sums of money, and ordering that the cause be referred to a master to take and state an account of the amount due to the plaintiffs from the defendant. From this decree an appeal was taken, and a petition was filed in the chancery court, stating that the master before whom the account was ordered to be taken, considered the appeal as suspending the execution of that order; that the defendant was directed to pay the costs in the several cases mentioned, and on the dismissal of the appeal theretofore entered by the defendant; the whole of which costs, amounting to $171.75, were unpaid, and the defendant was committed for a contempt for the non-payment. The petitioner prayed that the cause might proceed, notwithstanding the last appeal; and further, that the defendant might be directed to execute a conveyance of the trust estate mentioned in the pleadings, and also to deliver over and assign certain papers and documents mentioned.

Chancellor Kent, in deciding the matter, said : " I believe the practice in this court has always been according to the more ancient opinion in the English Chancery, and the appeal has been considered as a stay of proceedings.   *   *   *   My conclusion is that an appeal does, in the first instance, stay proceedings on the point appealed from, and that if the party wishes to proceed, notwithstanding the appeal, he must make application to the chancellor for leave to proceed; and, unless the Court of Errors should, at the time, be actually in session, and in possession of the cause, it must rest in the discretion of this court to determine whether the application ought to prevail. The difference, then, between the English practice and ours, is, that by the former the plaintiff must apply for an order to stay the proceedings; but here, the defendant must apply for leave to proceed."

In that case, the application for leave to proceed and for an order on the trustee to convey, was denied, with costs.

In Messonnier v. Kauman, 3 Johns. Ch. 65, the court gave leave, notwithstanding an appeal, to proceed in the cause below by a reference to a master to ascertain the sum due, etc.

In Riggs v. Murray, 3 Johns. Ch. 161, the court held that it rests in the discretion of the court to determine when and to what extent the mere fact of filing an appeal shall be a supersedeas to all further proceedings.

In Hart v. The Mayor, etc., of Albany, 3 Paige Ch. 381, in speaking of the effect of the provisions of the revised statutes of New York in respect to appeals from decrees and orders of courts of equity, it is said: " The only difference, therefore, between the practice here and in England, at the time of the adoption of the revised statutes, was, that in England the appellant was compelled to obtain an order to stay the proceedings in the suit as to the matter of the appeal; but here the application came from the respondent to proceed, notwithstanding the appeal. One of the evils of our practice was, that the appeal suspended the proceedings in all cases in the first instance, without giving to the respondent any adequate security for his debt or costs. Another was that the chancellor possessed an unlimited discretion, and might deprive the appellant of the benefit of his appeal, in any case, by permitting the respondent to proceed and enforce the order or decree of the court below before the appellant could obtain a hearing before the court of *dernier ressort*. The object, therefore, of the revisers, was to take from the chancellor, in all cases where it could be done without injury to the rights of suitors, the discretionary power of permitting the party to proceed in the suit notwithstanding the appeal, and at the same time to furnish to the respondent an adequate remedy against the injurious consequences of the delay."

The mode of appeal from the court of chancery to the House of Lords was by the presentation of a paper peti-

tion, which appeal, as we have before said, might be taken
from an interlocutory as well as a final decree, and which
appeal and right of the Lords to take jurisdiction and sus-
pend all proceedings in the court below, was based, not upon
any statute, but upon a right assumed by the House of
Lords as the supreme judicial tribunal of the nation, and as
such tribunal, it was the settled rule of the House of Lords
upon appeals always to give such a decree as the court be-
low ought to have given; indeed, it is said that this was
the great and leading maxim in their system of appellate
jurisprudence, and instances are accordingly very frequent
in which the Lords on appeals from interlocutory orders in
chancery, have reversed the order and decided finally on
the merits.   Barton's Suits in Equity, p. 167; Mulford &
Tyler's Plead. & Prac. in Eq., p. 489; LeGuen v. Gouver-
neur & Kemble, 1 Johnson's Cases, 436, 507, 508; Leigh-
ton v. Sir Edward Leighton, 1 Peere Williams, 671; 2
Daniel's Prac., p. 1491; Canons of St. Paul's v. Crickett, 2
Vesey, Jr., 563, note 4.

It is apparent the rule existing in England and in the
State of New York at an early day as to the effect of ap-
peals from decrees and orders of the courts of chancery upon
proceedings upon the cause as it existed at the time of the
appealing and subsequent proceedings attempted therein,
throws little light upon the effect of an appeal in this State,
in which such procedure is regulated by constitution and
statute, and in which, except in a few instances, appeals are
only allowed from final decrees.   In Smith v. Chytraus, 152
Ill. 664, an appeal from a decree of a court of chancery, the
Supreme Court said :

" When an appeal is perfected, the jurisdiction and con-
trol of the court below cease, and the appeal becomes a
*supersedeas*, or a stay of all proceedings to enforce the execu-
tion of the judgment or decree."

With, so far as we are aware, but few exceptions in this
country, the authorities are that a properly perfected appeal
from all of a final decree suspends entirely the execution of
such decree.   Black on Judgments, Sec. 243; Elliott on Ap-

pellate Procedure, Sec. 541; Boynton v. Foster, 7 Mec. 415; Levi v. Karrick, 15 Iowa, 444; Turner v. First Nat'l Bank, 30 Ia. 191; Carmichael v. Vandebur, 51 Ia. 225; Lewis v. Lewis, 20 Mo. App. 546; Townsend v. Townsend, 60 Mo. 246; Elgin Lumber Co. v. Langman, 23 Ill. App. 250.

It is said that by the suspension of the execution of a final decree the decree itself is not thereby vacated, and that whatever burdens, charges or liens are created by it, notwithstanding the appeal, yet remain. As a rule, the appeal suspends action upon the decree, leaving the parties in the condition in which they were at the time the appeal was perfected. Elliott on Appellate Procedure, Sec. 546.

Title vested by a decree is not divested by an appeal therefrom; it is therefore urged, in the present case, that as the decree of the Circuit Court appointing a receiver and directing that all the property of the investment company be transferred to him, with power to sell and dispose of the same, that the title to such property *eo instanti* passed at the entering of the decree appointing the receiver, and was not divested by the appeal subsequently perfected; that therefore the Circuit Court, notwithstanding the perfection of the appeal from such decree, has power to compel the investment company and its secretary, appellant, to transfer the property of such investment company to the receiver, to whom such property belongs. In support of such contention the case of Penn Mutual Life Insurance Company v. Semple, 38 N. J. Eq. 314, is cited. That case arose upon a bill to foreclose a mortgage; in the course of the proceedings a controversy was had as to the ownership of some machinery on the mortgaged property, upon which machinery a judgment creditor had levied. The court held that the judgment creditor was entitled to sell under his execution such machinery. From this portion of the decree of the court, the complainant, the mortgagee, appealed and applied to the court, asking it to restrain the judgment creditors from disposing of such machinery pending the appeal, and that a receiver be appointed, which application was granted.

So far from this being an authority supporting the contention of appellee, if anything, it is the reverse. The restraining order was granted and the receiver appointed, not at the instance of appellee, but of appellant.

In Beard v. Arbuckle, 19 W. Va. 145, all that the court held, and by the appointment of a receiver after the perfection of an appeal did, was to attempt to preserve the property, on the petition of the creditors, so that it might be forthcoming to answer their demands. There was no attempt to, and the court did not in its order appointing a receiver, affect anything covered by the supersedeas.

The decree appealed from has been for the sale of the debtor's land. The receiver was ordered, upon petition of creditors, it would seem not parties to the original litigation, to take charge of the rents and profits, which, so far as appears, were not involved in the litigation or decree from which the appeal was taken.

The case of Hutton v. Lockridge, 27 W. Va. 428, is very similar to that, before mentioned, of Beard v. Arbuckle.

It is quite true, as is said in Beach on Receivers, Sec. 46, and in High on Receivers, Sec. 29, that where an appeal is taken from an order or decree appointing a receiver, the receiver is not by such appeal discharged or removed. As before stated, the perfection of an appeal suspends the execution of the decree appealed from, leaving the matters in the condition in which they were when the appeal took effect; and while the receiver can not, after the appeal, proceed to divest the appellant of property in its possession, it is probably likewise the case that the appellant can not take from the receiver, property, the possession of which he had acquired before the appeal began to operate as a supersedeas.

Appellee contends that the court below was, after the appeal, proceeding only to preserve the *status in quo.*

The *status in quo* was that the Investment Company was in possession of its assets; and that appellant was at liberty to discharge his duties as its secretary; this *status* the court undertook to disturb by, after the appeal compelling the company to yield possession of its property to a receiver,

enjoining its secretary, the appellant, from acting in any way in behalf of the company.

With whether the bond upon which an appeal from the final decree was allowed, was sufficient, we have nothing to do. The perfected appeal operated as a supersedeas, whether the bond was sufficient or insufficient.

If the court below allowed an appeal upon an insufficient bond, the remedy of the people is not by a disregard of the perfected appeal.

The order of the Circuit Court appealed from, as well that portion enjoining appellant as that committing him to jail, is reversed.