# CHARLESTON.

JOSEPH N. COLTRANE *v.* MICHAEL P. GILL *et al.*
(No. 5406)
Submitted September 2, 1925.   Decided September 8, 1925.

1. APPEAL AND ERROR—*To Be Appealable as Adjudicating Principles of Cause, Decree Must Ordinarily Adjudicate All Questions Properly Raised by Pleadings.*

   To be appealable, as adjudicating the principles of a cause, a decree must ordinarily adjudicate all the questions properly raised by the pleadings.   (p. 451.)

2. SAME—*To Be Appealable, Judgment of Court Must Be Actually Entered.*

   A finding of fact and the conclusions of the court thereon do not render a decree appealable, even though the intention of the court to render a certain judgment is clearly apparent therefrom.   The judgment of the court must be actually entered.   (p. 454.)

Appeal from Circuit Court, Harrison County.

Suit by Joseph N. Coltrane against Michael P. Gill and others, to dissolve a partnership, and for an accounting, and to have a conveyance set aside as fraudulent and the property conveyed subjected to payment of share of partnership liabilities.   From a decree dissolving the partnership and settling the indebtedness, defendants Michael P. Gill and John L. Gill appeal.

*Dismissed.*

*Frank C. Haymond* and *J. C. McManaway,* for appellants.
*Coffman & Morris,* for appellee.

HATCHER, JUDGE:

This case is here on the appeal of Michael P. Gill and John L. Gill from a decree rendered by the Circuit Court of Harrison County.

In October of 1921, Joseph N. Coltrane, his son, E. Glenn Coltrane and his son-in-law, Michael P. Gill formed a partnership for the purpose of conducting a general retail store at Lumberport, West Virginia.   The partnership existed un-

der an oral contract until January 22nd, when it was reduced to writing. The salient points of the written contract are that the partners each contributed $750.00 to the partnership funds and were equal partners in the adventure; that the store building in which the business was conducted was furnished by Joseph N. Coltrane free of rent; that Michael P. Gill should manage the partnership business; that E. Glenn Coltrane should be the treasurer and should handle the moneys of the firm, keep its books, and make collections; that Gill and E. Glenn should each be paid a monthly salary of $50.00; that neither the total debts of the firm, nor the total amount of its credits, should at any time exceed the sum of $3,000.00.

Dissensions arose among the partners and the affairs of the partnership soon became badly involved. Details of its course are unnecessary. We have here but a repetition of the old story of a house divided against itself. On June 19th, 1922, Michael P. Gill, sensing the approaching denouement conveyed, without consideration, his interest in some valuable lots to his brother, John L. Gill. About August 16th, 1922, Michael P. withdrew from the store, and thereafter had nothing to do with it. The plaintiff thereupon assumed its management, and later, to-wit: on September 22nd, 1922, brought this suit.

The bill alleges that M. P. Gill badly managed and improperly ran the partnership business, that he withdrew for his own personal use more than $2,000.00 from the partnership funds, and that the partnership was insolvent on June 19th, 1922, the date of the Gill conveyance. The bill prays for a dissolution of the partnership, an accounting and settlement of its affairs, and to have the conveyance of M. P. to John L. Gill set aside as fraudulent, and the property thereby conveyed subjected to payment of M. P. Gill's share of the partnership liabilities.

The defendant, E. Glenn Coltrane, filed no answer, but in separate answers filed by the Gills, they admit that the conveyance from Michael P. Gill to his brother was without consideration. They severally deny, however, that the partner-

ship was insolvent at the date of the conveyance. M. P. Gill denies all charges of mismanagement and misconduct, makes counter-charges of misconduct against both the plaintiff and E. Glenn Coltrane, and alleges that the plaintiff took from the store without ever paying therefor large quantities of merchandise, amounting in value to at least $1,500.00.

The case was referred to a commissioner of the court, to take and state the partnership account. Over 700 pages of depositions were taken, and a large number of exhibits filed before the Commissioner. A considerable part of the evidence, both for the plaintiff and defendants was given in support of the several charges of mismanagement, and in regard to money and merchandise taken and not paid for by each of the partners. Upon this conflicting mass of testimony, the commissioner found, among other things:

(a) that "sometime after the business began, the firm became heavily involved financially, and finally insolvent"; (b) that since the beginning of this suit, the plaintiff paid out of his own funds debts of the partnership amounting to $5,475.00; (c) "that, from the record in this case, it is impossible for him to state an account of this partnership firm's financial condition, and to find what may be due from either of said partners to said partnership firm, or to the said plaintiff, Joseph N. Coltrane. It will be noted that the only tangible data produced in this cause, upon which to base a settlement, are two items, the first being the amount of cash contributed by each of the three members of the firm, and the other, the inventory taken just prior to the institution of this suit. * * * There has been no evidence offered as to the amount of cash sales, the amount of money deposited in the bank, cash on hand, accounts receivable, or accounts payable. * * * The only book of account kept, and produced before the commissioner, was a ledger containing a list of accounts payable. * * * It also contained two or three accounts receivable. * * * The original inventories were not filed nor satisfactorily accounted for. The accounts receivable appear to have been kept on the McCaskey Register system. They were not produced before the commissioner, al-

though, supposed to be in the control of the plaintiff and the defendant, E. Glenn Coltrane. With this meager data, the commissioner is unable to state an account of this partnership business. * * * The plaintiff and defendant, E. Glenn Coltrane, upon the retirement of Michael P. Gill from the partnership, took exclusive control and charge of the partnership store, and have continued to run and operate it ever since. All of the assets of this firm went into their hands, and under their control, and the plaintiff, in his pleading and proof, fails to account for any moneys received from bills receivable, cash on hand, or cash sales, at any time, from the inception of the partnership firm, or after the defendant, Michael P. Gill, retired therefrom;'' (d) and that the conveyance of Michael P. Gill to John L. Gill was not made with intention to defraud the creditors of Michael P. Gill.

Numerous exceptions were taken by the plaintiff to the commissioner's report. Upon a consideration of these exceptions, the Circuit Court found as follows:

"1. That on the 22nd day of September, 1922, and for about one year prior thereto, Joseph N. Coltrane, E. Glenn Coltrane and Michael P. Gill were equal partners in a mercantile business at Lumberport, conducted under the firm name of Coltrane and Gill;

"2. That on the date last aforesaid the liabilities of said partnership far exceeded its assets;

"3. That on the date last aforesaid the said Michael P. Gill withdrew from further cooperation in the conduct of said business;

"4. That on the 19th day of June, 1922, the said Michael P. Gill conveyed to his brother, John L. Gill, without valuable consideration, his undivided one-half interest in and to those two certain lots * * *; that on the date last aforesaid the financial affairs of said partnership were badly involved—a fact then known to Michael P. Gill—and that the said conveyance was made by him in order to avoid impending liability as a member of said partnership, and, therefore, the said conveyance was a fraud on the creditors of said partner-

ship and should be set aside on that ground;

"5.    That the existing assets of said partnership must be converted into cash and application thereof made on the indebtedness of the partnership before the individual liability of any of the partners can be ascertained;

"6.    That Joseph N. Coltrane has paid on the indebtedness of said partnership the sum of $5,-475.00, for which amount he should be credited in final settlement;

"7.    That each of the partners will be held liable for one-third of the excess of indebtedness over assets, after the latter has been reduced to money and applied on the indebtedness; * * *

10.    That in so far as the Commissioner's report is in conformity with the finding and holding herewith it should be confirmed.

"It is therefore adjudged, ordered and decreed that the said Commissioner's report is hereby amended so as to conform with the finding and holding of the court as above set forth and the said commissioner's report as amended is now hereby ratified and confirmed."

The court further decreed that the partnership should be dissolved, that the indebtedness of the partnership as of September 22nd, 1922, was $15,150.77; that up to June 9th, 1923, there had been collected from book accounts of the partnership and applied to the indebtedness of the partnership the sum of $3,504.59, leaving $11,646.18 of its liabilities yet unpaid; that the value of the merchandise and fixtures of the partnership (as invoiced on August 8th, 1922) was $3,532.75; that the merchandise, fixtures, and such book accounts of the partnership as remained unpaid after June 9th, 1923, should be converted into money, and the proceeds applied to the settlement of the remaining partnership liabilities. A special commissioner was appointed for that purpose.

The first proposition which confronts us is whether this decree is appealable. Counsel contend that it is appealable because it "changes the possession of the property and adjudicates the principles of the cause." The change of possession referred to is the change in possession of the part-

nership assets from that of the Coltranes to that of the special commissioner appointed by the court to sell the assets. Counsel cite *Ruffner* v. *Mairs,* 33 W. Va. 655, and other West Virginia cases which hold that a decree appointing a receiver to take charge of personal property renders a decree appealable. We consider those decisions inapplicable to this case. In those cases, the property, whose possession was changed, was *in controversy.* Here, there is no dispute over the title or possession of this property.

The contention of adjudication is based on paragraphs 4, 6 and 7 of the decree, and on its statement of partnership liabilities. Do these findings of the court constitute such an accounting as is contemplated in the prayer of the bill? The usual method of taking a partnership account is stated by Lindley on the Law of Partnership, page 598, as follows:

> "1. Ascertain how the firm stands as regards non-partners.
>
> "2. Ascertain what each partner is entitled to charge in account with his co-partners; remembering, in the words of Lord Hardwicke, that 'each is entitled to be allowed as against the other, everything he has advanced or brought in as a partnership transaction, and to charge the other in the account with what that other has not brought in, or has taken out more than he ought.'
>
> "3. Apportion between the partners all profits to be divided or losses to be made good; and ascertain what, if anything, each partner must pay to the others, in order that all cross claims may be settled.
>
> "In order, therefore, to take a partnership account, it is necessary to distinguish joint estate from separate estate; joint debts from separate debts; and to determine what gains and what losses are to be placed to the joint account of all the partners, or to the separate accounts of some or one of them exclusively."

Shorter instructions are given by Rowley in Modern Law of Partnership, paragraph 726:

> "The method of drawing up the account should
> be to ascertain and state an account as to the
> partnership and its creditors, then to credit each
> partner with contributions or advances made by
> him, then profits or losses should be ascertained,
> and all claims between the partners as to partner-
> ship affairs, settled and one balance struck as the
> sum owing by one partner to the other, or by the
> firm to each, although another method may be fol-
> lowed by agreement."

Whatever method may be followed, a complete account of
the partnership affairs must necessarily ascertain the indebt-
edness of each partner to the firm in order, as Mr. Lindley
says "that all cross claims may be settled." A partnership
account should also contain a statement of its accounts re-
ceivable. Neither the commissioner nor the court attempted
to state the bills receivable of the partnership. The commis-
sioner reported that the only evidence before him upon which
to base a statement of the partnership accounts related to
the cash originally contributed by the partners, the firm as-
sets just prior to this suit and the accounts payable; and
that no evidence was offered as to the cash sales, the money
deposited in bank or the accounts receivable. Upon this
meager information, he reported that he was unable to state
an account. With no further evidence on these matters be-
fore the court than was before the commissioner, the court
could no more state a complete account than could the com-
missioner. We observe nothing in the decree overruling the
commissioner's report in this respect, or justifying a finding
different thereon. To the contrary, after amending it on
other matters so as to conform to the holding of the court,
the decree then *ratified and confirmed* the report. By this
confirmation, the court also held that no account of the
partnership affairs could be stated at this time because of
insufficient evidence.

Neither the report nor the decree states an account show-
ing the amounts taken out of the partnership by the sev-
eral partners. These matters are raised by the pleadings,
are controverted by the several parties against whom they

are plead, and should therefore be adjudicated. "All matters in controversy should be adjudicated." Paragraph 731, Rowley, *supra.* "With respect to accounting and distribution, the decree should provide for final adjustment of all controverted questions before the court." 30 Cyc. 747. "In a suit in equity for an account brought by one partner against the other—the accounts must be stated by the commissioner and the rights of the several partners must be finally passed on by the court as if each partner were a plaintiff, filing a bill against his co-partner." *Hyre* v. *Lambert,* 37 W. Va. 26.

One of the main objects of this suit was to secure a final accounting between the partners. Until such an account is had, the cause is not fully adjudicated, and the decree is not appealable on the theory of adjudication. The case of *Wood* v. *Harmison,* 41 W. Va. 376, cited by counsel as a "leading case" on this proposition, holds that an appealable decree is one "which adjudicated not some, but all the questions raised in the pleadings, or otherwise."

Paragraph 4 of the decree finds that the conveyance of Michael P. Gill to John Gill was a fraud on the creditors of the partnership. It will be noted, however, that the decree does not purport to annul this deed. It merely asserts that the "conveyance should be set aside." This paragraph cannot be treated other than an expression of an opinion by the court. A decree which goes no further than to state a judicial opinion is not an appealable decree.

> "Under our statute appeals are allowable in any case in chancery wherein there is a decree or order adjudicating the principles of the cause. * * * The expression of the opinion of the court is not such adjudication. * * * The matter is still in the breast of the court, and the judge may change his opinion before entering an appealable decree. *Hanna* v. *Banks,* 55 W. Va. 185, *Corley* v. *Corley,* 53 W. Va. 142; 2 Cyc. 614-616; 2 Ency. Pleading and Practice, 62-65."

*Armstrong* v. *Ross,* 56 W. Va. 16.

Paragraph 7 makes the general statement that ''each of the partners will be held liable for one-third of the excess of indebtedness over assets.'' This paragraph enters no judgment against the partners for any fixed amount. A specific sum cannot be ascertained and decreed until a final accounting is had between the partners. The holding in paragraph 7 is premature, but at this time furnishes no grounds for appellate review. It is equally harmless as to the creditors of the partnership, as they are not before the court, and are in no way prejudiced thereby. As was said by Judge GREEN in *Harris* v. *Hauser,* 26 W. Va. 595:

''We are an Appellate Court, whose business it is to review the decrees of the circuit courts, when the cause is substantially ended in those courts. It was never designed or intended, that this Court should take supervision of the circuit courts during the progress of the causes, and, if they failed to adjudge the principles of the cause, when one of the parties to the suit thought that such principles might and ought to be adjudicated, or if they made mistakes during the progress of the causes, interpose and correct such errors and adjudicate the principles of the cause, before the court below had decided them. This would not be appellate jurisdiction.''

Discerning no such adjudication of the principles of the cause in the decree as the law requires of an appealable decree, the appeal will therefore be dismissed.

*Dismissed.*