# Dill *v.* Westbrook, Appellant.

*Statute of frauds—Gift—Real estate—Evidence.*

1. Where an attempt is made to set up a parol gift of real estate by a father to a son, the evidence to sustain the gift must be direct, positive, express and unambiguous. If not a single witness testifies that he was present when the gift was made, or that he heard it spoken of between the father and son, or brings the father and son together face to face with respect to the transaction, and there is nothing in evidence but loose declarations made by the father to the effect that he had turned over his property to his son, and that he himself had nothing to do with it, and there is no evidence that the son had made improvements on the property out of his own funds, the alleged gift will not be sustained.

*Statute of limitations—Adverse possession—Admission of title.*

2. If an occupant of land admits in writing that the land on which he lives belongs to another, it is a voluntary submission to the title of the other, and a surrender of any rights acquired by a prior possession. Nothing can more effectually interrupt the running of the statute than an express acknowledgment of the owner's title.

Argued Oct. 12, 1909. Appeal, No. 52, Oct. T., 1909, by plaintiffs, from judgment of C. P. Indiana Co., June T., 1907, No. 84, on verdict for plaintiffs in case of Benson S. Dill, Samuel O. Dill, George S. Dill, Jennie Dill, Mary Ann Ruttinger and Frank Ruttinger, her husband, Amanda Tomb, Lizzie

Buchman and Arnold Buchman, her husband, and Samuel O. Dill, Devisee under the Will of Anson J. Dill, deceased, Devisees of Matthew Dill, deceased, v. Laura M. Westbrook and Nathan B. Westbrook, her husband, Harry R. Dill, Lizzie R. Stewart and William G. Stewart, her husband, Rose L. Dill, John Lowman, Bertha Lowman, Roy L. Lowman, Mary Lowman, Helen Lowman, Minors, Rose Lowman, Minor, John Lowman, Jr., Minor; and H. M. Lowman, Guardian of the above-named Minors. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Ejectment for land in townships of Buffington and Brush Valley. Before TELFORD, P. J.

The facts are stated in the opinion of the Supreme Court.

The court charged as follows:

Matthew Dill acquired the title to a large tract of land situated in Buffington township, this county. This tract of land comprised several—three, I believe—adjoining tracts. These tracts have been referred to in this trial as the Mansion House farm, the Reever farm, and the Carnahan farm. There is no dispute about the title to the Mansion House farm; that farm has nothing to do with this case. The controversy is about the tracts adjoining and known as the Reever tract and the Carnahan tract, the latter being sometimes referred to as the Marsh farm.

The plaintiffs contend that in 1847 Matthew Dill died seized of these lands; that is, that he owned them at that time. Having them in his possession and control he made a will, which bears date, I believe, April 13, 1845, by which he devised his homestead farm to his wife, Mary, for life; devised all his real estate to his son George for his life and after the death of George to his other son, James C. Dill, for his life, and at his death to the children of his two sons, George and James, share and share alike. Mary Dill—it is in evidence, I believe—died about 1870; James Dill in 1885, and George Dill in 1906. The plaintiffs, who are the children of George Dill, have brought this action to recover eight-

fourteenths undivided part of the Reever and Carnahan tracts, containing some 500 or 600 acres of land. Their right to this interest in these tracts of land is denied by the defendants, who are in possession, and who are the children and grandchildren of James C. Dill, and who were devisees under the will, share and share alike, with the children of George Dill.

Matthew Dill being agreed as the common source of title from whom both plaintiffs and defendants claim, it has not been necessary to go back of his title in this controversy; and so the plaintiffs, showing his death, have offered his will and the probate thereof, by which will George Dill, his son, was given a life interest in all the real estate of which he died seized, and at his death James C. Dill was given a life interest, and at his death the children of George and James C. Dill were to receive the remainder, share and share alike. The plaintiffs have shown the death of James C. Dill in 1885, as I have stated, and the death of George Dill in 1906. That the children of George Dill are eight in number, and are represented here as plaintiffs. That the children of James C. Dill were six in number, and are all represented by the defendants. The plaintiffs having made this prima facie case are entitled to recover a judgment for eight-fourteenths of the lands in controversy, unless there is a reason shown against it.

The defendants do not deny these allegations of the plaintiffs, except in that they say that Matthew Dill did not die seized of the Reever and Carnahan tracts, but that in 1845 or 1846 Matthew Dill gave these tracts to his son George and that when he died in 1847, about two years afterwards, he did not own this land, and hence his will gave no title to it. It is alleged that this gift by Matthew Dill to his son George was a verbal gift; that there was no writing to evidence it.

In Pennsylvania real estate cannot pass from one to another in this way. There must be some written evidence of a gift or sale. But when a parol gift is fully executed by the delivery of possession, and followed by valuable improvements made upon the premises, a title will stand, notwithstanding the statute of frauds and perjuries, which requires written evidence. This is

so in the case of a gift from a parent to a child as well as between strangers. Such gifts, however, must be established by such proof as is credible; it must be of such weight and directness as to make out the facts alleged beyond doubt; and further, in case of a gift from a parent to a child, the parties must be brought face to face in the making or in the rehearsal of the gift.

In order to sustain this alleged parol grant by Matthew Dill to George Dill in 1845 or 1846 evidence has been submitted by the defendants. The testimony of four of the witnesses for the defense who are now dead was taken in 1850, before an examiner appointed by the court. This evidence was preserved in the court and has been produced and read in your hearing. A fifth witness, still living, has been upon the stand. The testimony of these five witnesses—Benedict Marsh, Samuel Conrad, William Conrad, Alexander Patterson, and William R. Doke—has been so recently and so fully presented to you by counsel in their argument that we will not now pause to call your attention again to it. It is for you to recall and pass upon in determining your verdict.. It is for you to decide under the law what weight shall be given to this evidence.

Following this proof offered in support of the gift the defendants have presented the deed of George Dill and wife, by which for a consideration of $2,500 he conveyed the land in controversy, and which was the alleged subject of the parol gift, to James C. Dill, the father of the defendants, and from whom upon his death they inherit. Upon the presentation of these proofs the defendants contend they should have a verdict.

I have stated that a father may give to his son land by a verbal contract. Such a parol gift may be supported by evidence of the declarations and confessions of the father alone. But this character of evidence has been declared by the courts to be unsatisfactory on account of the facility with which it may be fabricated and the impossibility of contradicting it and the mistakes and failures of recollection. And so it is required of you that you shall scrutinize this testimony and exercise your judgment in determining the weight which you should

give it. Considering the evidence in this case relating to this alleged parol contract, it must be found to be free from doubt. As between a father and a son the existence of the family relation requires that you should interpret the use and possession of the father's real estate by the child differently from similar actions between strangers.

The evidence of the gift or sale must be express, positive and unambiguous, and its terms must be clearly defined; and all the acts necessary to its validity must have special reference to it and nothing else. If the gift is in parol it must be an unqualified parol gift, and there must be the taking and maintaining of exclusive possession thereunder and the making of valuable improvements in the land.

You will recall the evidence in regard to the deed from George Dill to James C. Dill in 1855. You will recall that following the description of the land in that deed the following clause appears: "Which said tracts of land became duly vested in the said George Dill by law, a reference being had to the records of Indiana county and the last will and testament of Matthew Dill, deceased, will more fully and at large appear." Now, this clause can only be viewed as a reference by George Dill to the source from which he derived the title to the lands which he conveyed, which he acknowledges to be in part by the will of Matthew Dill. If this admission and confession is to be taken as a true statement of the fact and James C. Dill accepted the deed with this understanding, then George Dill had. only a life interest in the lands and James C. Dill acquired only that life interest; and upon George Dill's death in 1906, James C. Dill being also then deceased, the plaintiffs were entitled to eight-fourteenths of this land. You will consider this evidence in connection with other evidence bearing on the existence of this parol contract, and give to it such weight as you may believe it entitled to have.

Verdict and judgment for plaintiffs for the undivided eight-fourteenths of the land described in the writ.

*Error assigned* among others was the charge of the court, quoting it.

*M. B. Stephens* and *Samuel Cunningham,* with them *John S. Fisher, Ernest Stewart* and *John H. Stephens,* for appellants.— We contend that the statute of limitations began to run at the time George Dill entered upon the said land, which was in the lifetime of Matthew Dill, and the court should have given the benefit of this point to the defendants, with full instructions to the jury as to the effect of the statute of limitations in this case: Williams v. Beam, 196 Pa. 341; Campbell v. Braden, 96 Pa. 388; Ewing v. Ewing, 96 Pa. 381; Moreland v. Moreland, 121 Pa. 573.

There was sufficient evidence of a gift: Hart v. Carroll, 85 Pa. 508; Brewer v. Lohr, 35 Pa. Superior Ct. 461; Aitkins' Heirs v. Young, 12 Pa. 15; Williams v. Beam, 196 Pa. 341; Baldridge v. McFarland, 26 Pa. 338.

*J. Wood Clark* and *F. L. Williams,* with them *C. C. Coleman* and *John A. Scott,* for appellees.—One accepting a benefit under a will is estopped from asserting a claim repugnant to its provisions: Cox v. Rogers, 77 Pa. 160; Cox v. Cox, 26 Pa. 375; Machemer's Est., 140 Pa. 544; Zimmerman v. Lebo, 151 Pa. 345; Cummings's Est., 153 Pa. 397; Miller's Est., 159 Pa. 574, 575; Stump v. Findlay, 2 Rawle, 168.

The following authorities are cited on the proposition that the parties to a deed and those holding under them may not dispute the recitals in such deed: Scott v. Douglass, 7 Ohio .Reports, 227; Jackson v. Ireland, 3 Wendell, 99; Jackson v. Thompson, 6 Cowen, 178; Olwine v. Holman, 23 Pa. 279; Rankin v. Simpson, 19 Pa. 471.

OPINION BY MR. JUSTICE STEWART, January 3, 1910:

This was an action of ejectment for certain undivided interests in two adjoining tracts of land containing together 564 acres, in Buffington township, Indiana county. All parties to the controversy claimed under and through Matthew Dill, who died in 1847. Plaintiffs are the children of George Dill, son of Matthew, to whom was devised a life estate in the land upon the death of the widow, with remainder, upon the death of both George and James Dill—the latter also a son of

Matthew, and given a life estate upon the death of George—to the children of George and James jointly. The defendants are the children of James, who claimed to hold under a deed to James from his brother George, who they assert derived title to the land by parol gift from his father several years before the latter's death. The will of Matthew Dill bears date April 3, 1845, and the item in it bearing on the controversy is as follows: "I give and bequeath to my son George Dill after the death of his mother, all my real estate, for life, and at his death, to James C. Dill for life; and after the decease of George and James Dill, to their children, share and share alike." Plaintiffs having shown the death of both George and James, rested their case on the devise contained in the will. The defense set up was twofold: first, the alleged parol gift from Matthew to George; and, second, adverse possession for more than twenty-one years before the bringing of the suit. On neither of these propositions, as we shall show, were defendants entitled to go to the jury. Since they had the benefit of a submission on both, and lost on both, it will be unnecessary for us to consider any of the twenty-five assignments of error which confront us in this appeal. The discussion may be confined to the single question of the sufficiency of the evidence adduced by the defendants to raise an issue of fact on either of the positions taken.

In 1850, three years after the death of his father, George Dill instituted proceedings to perpetuate testimony in support of a claim he then made that his father had given him the land. The testimony of four witnesses, all since dead, was taken, and this testimony was offered and admitted on the trial of the present case. It was supplemented by the testimony of a single living witness. It will be sufficient to indicate briefly the facts appearing in the testimony which were relied upon to establish the gift. Benedict Marsh testified that he was the tenant on one of the tracts in dispute during the last few years of Matthew Dill's life; that he had several interviews with him in regard to leasing the premises; that on the last occasion he found him sick in bed, and when he made known his business the old man said, quoting the words of the

witness, that he had nothing at all more to do with it, for he had thrown it all into his son George's hands, for him (George) to do with it as he pleased, adding, "just as you and him make your bargain I am willing to abide by it." Further on this witness says that he received the lease from George, had continued in the occupancy of the leased premises until the time he testified, and that he had made certain improvements thereon. Samuel Conrad testified that Matthew Dill, a few months before his death complained to him that George was requiring Marsh (the first witness, lessee of one of the tracts) to pay tax on too much of the land; that he thought George should pay taxes on 100 acres of the tract in relief of Marsh, inasmuch as George had certain advantages on the tract that Marsh had not; that he had talked to George about it but that he would give him no satisfaction. The old man requested the witness to speak to George in regard to it, saying in this connection that for his part he had nothing at all to do with it, that he had given it to George, that it was all in his hands, and that he would like him to do what was right. This witness also testified to improvements made by Marsh which had enhanced the value of the property. Alexander Patterson testified that in 1844 he rented from Matthew Dill a house on one of the disputed tracts; that in the spring of 1846 he applied for a renewal of his lease and Matthew told him that if he wanted to rent the place again he would have to rent it from George; that he had given it to George, and that he had nothing to do with it; that he had given the Reever tract to George. William Doke testified that after Patterson had vacated the premises he leased them from George Dill, and that while he was there George had erected a barn on the tract. William S. Conrad testified to a conversation he heard between Matthew Dill and his father, which in substance and effect was the same as that testified to by Samuel Conrad, the previous witness. While what we have thus given is an abridgement of the testimony, it omits nothing that could have any bearing on the one question before us. Its insufficiency to overcome the bar of the statute of frauds and perjuries is apparent. When such an attempt is made, it is neces-

sary, first, to establish the gift or contract by direct, positive, express and unambiguous evidence; and, second, the gift established, to show a case within the equities of the statute. "When an attempt is made to set up a parol contract of sale against a father either by his son, or one claiming under the son, the evidence of the contract must be direct, positive, express and unambiguous. Not only must the terms and conditions of the contract and its substance be well and clearly defined, but it has been held, that the contracting parties must be brought together face to face. The witnesses must have heard the bargain when it was made, or must have heard the parties repeat it in each other's presence. A contract is not to be inferred from the declaration of one of the parties:" Ackerman v. Fisher, 57 Pa. 457. "In no case can a parol conveyance of land be taken out of the statute of frauds, but by a particular equity arising from the payment of purchase money, or, what is much the same, expenditure in improvements made with money of the donee, of which it would be a fraud in a donor to deprive him; and such an equity cannot be contended by a volunteer. A parol gift to a son, which has induced no such expenditure, is as much within the statute as if it were to a stranger:" Eckert v. Mace, 3 P. & W. 364, note. The evidence falls far short of either of these requirements. With respect to the gift itself, not a single witness testified that he was present when any gift was made; not one testifies to having heard it spoken of between father and son; no witness brings them together face to face with respect to the transaction. We have nothing but loose declarations made by the father to the effect that he had turned over the property to George, and that he himself had nothing to do with it; but never an admission of an obligation or engagement on his part to vest the title in George either in his lifetime or at his death. If the conversations testified to can be construed into so many acknowledgments that he had made a gift of the property to George, they are certainly open to a very different construction consistent with the old man's continued ownership. Especially would this be so if the situation and circumstances be considered in connection therewith. At the time he made

these declarations Matthew Dill was an old man and had laid aside the cares of business. He was making his home with his son George who was farming the Mansion place, and who, according to the testimony of these very witnesses, was having in his charge the general management of his father's affairs. What more natural than that under such circumstances he should intrust to George the selection of tenants for his other several tracts of land, the looking after their leases, and attending generally to the business in connection with the farms. A fair and natural construction of the admissions testified to would give them no larger meaning than that the old man had turned over the property to George to manage as his agent. Certainly such construction is quite as natural and reasonable as the other that is contended for. It would be waste of time to enlarge further on this branch of the case. The giving was not witnessed by anyone; whether it was ever made, is at best left in uncertainty; if made, nothing appears as to what, if any, conditions were annexed, or what, if anything, was engaged to be done to give it effect. Nor is it shown that possession was ever taken pursuant to the alleged gift. "It is not alone sufficient for the party claiming the benefit of a parol contract to prove that he is in possession of the premises; but in addition to distinct and satisfactory proof of the contract, he must prove most clearly that he took the exclusive possession in consequence and in pursuance of the contract. Of this latter requisite there should not be a shadow of doubt resting upon the mind of either court or jury:" Robertson v. Robertson, 9 Watts, 32. But assuming the gift to have been established, what equity has been shown to overcome the statute? At the time, George was in possession of the home farm as tenant. Suppose the possession by the tenants to whom he leased the lands in dispute was his possession, and suppose further that improvements were made during their tenancy, at whose expense were these improvements made? It will not do to say that an inference arises that George contributed the money. Such fact, if it be a fact, must affirmatively appear, otherwise no equity which would call for an enforcement of the contract can arise. Here again the evidence falls short.

With respect to the other branch of the case it is only necessary to call attention to the recitals in the deed from George to James Dill, dated June 14, 1855. This deed purports to convey a fee simple in the disputed tract. Aside from the matter of the parol gift, George under his father's will had a life estate in the land, and this interest of his certainly passed by the conveyance. Any adverse possession on part of George to avail here must have commenced in the lifetime of Matthew Dill. It is alleged that it did then commence, and it is claimed that the possession under George's deed to James tacked to George's earlier possession. Now, while it is true that as early as 1850, three years after his father's death, George was in possession and was then claiming to hold adversely, yet from his deed to James, the deed under which defendants claim, it clearly appears that he had abandoned such adverse claim and was asserting a title derived under his father's will. Following a description by metes and bounds of the land conveyed—the subject of the present controversy—this occurs in the deed: "Being two tracts combined together. And the one being surveyed to Alex. Carnahan and Edward Hanna on a warrant bearing date 3 May, 1798, and the other surveyed to Alex. Carnahan on warrant dated 26 March, 1799, which said tracts of land became duly vested in the said George Dill by law, a reference being had to records of Indiana county and the last will and testament of Matthew Dill, deceased, will more fully and at large appear." There is no mistaking the significance of this recital. It is a clear, unequivocal declaration that the grantor was then holding under the will of his father, and not by virtue of any contract of gift or sale. It was a positive disclaimer and abandonment of his adverse holding, and broke forever the running of the statute of limitations which it is claimed had begun in his father's lifetime. It is a settled principle that if the occupant of land admits in writing the land on which he lives belongs to another, it is a voluntary submission to the title of the other, and a surrender of any rights acquired by a prior possession. Nothing can more effectually interrupt the running of the statute than an express acknowledgment of the owner's title. So much is

ruled in Miller v. Keene, 5 Watts, 348; Criswell v. Altemus, 7 Watts, 565; Sailor v. Hertzogg, 2 Pa. 182; Ingersoll v. Lewis, 11 Pa. 212.

A verdict for the defendants on either ground set up could not have been sustained, and the case therefore called for binding instructions.

Judgment affirmed.