# CHARLESTON.

WAYNE ALLEN v. SOUTHERN W. VA. OIL & GAS CORP.

(No. 5960)

Submitted November 8, 1927.    Decided November 15, 1927.

1. PRINCIPAL AND AGENT—*General Rule is That One Dealing With Agent is Bound to Know His Authority.*

   The general rule is that one dealing with an agent is bound to know the agent's authority.   (p. 520.)

   (Agency, 2 C. J. § 204.)

2. MINES AND MINERALS—*Lessor in Oil and Gas Lease, Changing Rental in Renewal, But Accepting Former Rental for Four Years, Cannot Afterwards Recover Difference Between New Rental and Amount Received.*

   Where the lessor in an oil and gas lease for a term of five years, which provides for the payment of delay rentals quarterly, near the end of the term receives from the lessee a proposed renewal thereof for execution, containing the same

terms and conditions as the original lease, and without the knowledge of the lessee erases the amount of delay rentals stated therein and inserts a different amount, and executes the renewal and mails it to the lessee, making no mention of the fact of such change, and the lessee files the paper away, and some months later has it admitted to record without knowledge of the alteration, and thereafter for a period of nearly four years the lessor continues to accept quarterly rental checks of the same amount he received under the original lease, such checks stating that they are in payment of rentals on the number of acres leased for the particular quarters named therein, such lessor cannot after so long a silence and apparent acquiescence maintain a suit for the difference between the amount inserted in the renewal by him and the amount received, on the theory that such checks were accepted as partial payments.   (p. 521.)

(Contracts, 13 C. J. § 87; Mines and Minerals, 40 C. J. § 730 [Anno.]).

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of Syllabi.)

Error to Circuit Court, Wayne County.

Assumpsit by Wayne Allen against the Southern West Virginia Oil & Gas Corporation.  Judgment for plaintiff, and defendant brings error.

> *Judgment reversed; verdict set aside; new trial awarded.*

*Charles W. Ferguson* and *William Earl Burgess,* for plaintiff in error.

*W. T. Lovins,* for defendant in error.

MILLER, JUDGE:

By this action in assumpsit the plaintiff sought to recover from defendant the balance alleged to be due him under a purported lease to the latter of a tract of thirty-five acres of land for the development of oil and gas.  From a judgment for the plaintiff in the sum of $1,060.00, the defendant prosecutes this writ of error.

The lease in question was dated March 29, 1922, for a term of five years, and contained the following provision:  "Second party covenants and agrees * * * to locate and complete a well on said premises on or before June 29, 1922, or to pay at the rate of Three Hundred Dollars per year ($300)

annually, payable quarterly, in advance for each additional. three months such location and completion is delayed from the time above mentioned for the location and completion of such well, until a well is completed.'' On March 29, 1922, a similar lease, for a like term of five years had expired, except that the original lease provided for the payment of thirty-five dollars per year, payable quarterly. During the term of the first lease, the defendant paid to plaintiff the sum of eight dollars and seventy-five cents regularly each three months. Shortly before the termination of this lease, the defendant prepared a renewal, to extend five years from the expiration of the original, with the same terms as to payment of delay rental, and sent the same to plaintiff by one John W. Blankenship, a notary public, for execution. Plaintiff did not execute the renewal at the time it was tendered him, but later changed it by erasing the words ''Thirty Dollars,'' and inserting in lieu thereof ''Three Hundred Dollars,'' after which he and his wife signed and acknowledged it and mailed it to the defendant. Upon receipt of the paper, Mr. B. J. Prichard, president of the defendant company, filed it away with a number of other leases, without looking at it any further than to ascertain if it was regularly executed and acknowledged. It was put on record in the office of the clerk of the county court in February, 1923.

The defendant continued to mail to plaintiff its check every three months, for the sum of eight dollars and seventy-five cents, which the latter received and cashed, until March 30, 1926. In April, 1926, defendant received a letter from plaintiff's attorney, advising it that it was indebted to plaintiff in the sum of $1,060.00 on account of the balance of delay rentals due him under the lease, and that unless the same was paid proceedings would be commenced to collect the amount demanded. On June 22nd, 1926, a few days before the expiration of the quarter for which the defendant had made its last payment, it mailed to plaintiff its check for one dollar, ''For consideration to be paid on surrender of oil and gas lease.'' Plaintiff received this check. The company then **executed a formal surrender** of the lease, and placed the same on record in the office of the clerk of the county court.

The only material conflict in the evidence is in regard to a conversation between plaintiff and Blankenship, and as to a letter which plaintiff claims he mailed the defendant "some several months before" he had his counsel write the company. Defendant's president says he never received such a letter. The evidence on this question was brought out on cross examination of the plaintiff. 'To the question: "Did you during that period of four years, while you were receiving these quarterly rental checks, at any time until sometime in March, 1926, ever notify the Southern West Virginia Oil & Gas Company that you were claiming any amount greater than eight dollars and seventy-five cents per quarter," he answered: "Yes, sir, I written Mr. Prichard some several months before I taken it to counsel, and never got no answer. * * * I don't know the exact date just now, but something like a year, * * * something like two years now." In another place in his examination he testified that the date of this letter was about a year before the trial, which would make it about three years and eight months after the date of the purported lease. What this letter contained does not appear.

Plaintiff testified that he told Blankenship at one time that he would not renew the lease unless the company would drill a well within ninety days, "and if they didn't they would pay me three hundred dollars a year for this lease whether they drill or not." Blankenship says he had a conversation with plaintiff in regard to a renewal of the lease, and that the latter said he "would not lease that way any more without a well in ninety days." It is agreed, however, that this conversation was had some time before Blankenship took the renewal to plaintiff's home and left it there. And both Blankenship and Prichard testified that Blankenship was not then in the employ of the company. What the occasion of this conversation was, does not appear from the evidence. It seems that plaintiff and Blankenship were neighbors, or lived in the same community.

Plaintiff testified that Blankenship promised to take up with the company the matter of making a renewal on different terms; and relies on the relationship of principal and agent. There is no evidence of agency at the time of this

conversation, and it is clear that Blankenship was not in the employ of defendant. Both he and Prichard testify that his only authority, after he was employed, was to secure signatures on the prepared renewals, and take acknowledgments. The renewals were all prepared in the company's office, and Blankenship had no authority to make terms with the lessors. There is no evidence to the contrary. Plaintiff was not present when the lease was delivered to his home. He says nothing about his understanding of Blankenship's authority. "The general rule is that one dealing with an agent is bound at his peril to know the agent's authority." *Uniontown Grocery Company* v. *Dawson,* 68 W. Va. 332.

The main question to be considered is: What was the understanding of the parties as to the terms of the renewal of the original lease? It is clear that Prichard understood that the renewal contained the same terms as to delay rental as the original lease, and that he never accepted it as a lease calling for three hundred dollars per year. All of his acts after receipt of the paper show this. If we say that he was negligent in failing to read the paper after it was returned to him, his negligence and his mistake as to the terms thereof, are to be excused by the subsequent acts of plaintiff in receiving sixteen checks, distributed over a period of four years, without advising defendant of the mistake. And the plaintiff's acceptance of the quarterly payments for so long a time creates a strong presumption that he knew all the time that the defendant had not discovered the change, which he has not overcome by simply testifying that he received the checks in partial payment. He says "I accepted it as partial payment on that as I knew Mr. Prichard all my life, and he has always been a friend of the family, he would be easy to settle with, probably." He gives no other reason for accepting the "partial payments." It is improbable that he would continue for a period of four years, or even three, if he did in fact write defendant in regard to the error, to receive quarterly payments of the same amount each, and of the same amount payable and paid under the original lease, instead of the seventy-five dollars he now claims, if he believed the defendant knew of the change he made in the paper. Three

of these checks were received and cashed before the writing was admitted to record.

This is not a question of the receipt by defendant of the altered paper writing prepared by him, but a question of its acceptance of the terms inserted by the plaintiff. Plaintiff's return of the renewal was not an acceptance of defendant's offer, but an offer to defendant. No offer becomes a contract until accepted and notice to the other party. *Weaver* v. *Burr,* 31 W. Va. 736; *Barrett* v. *McAllister,* 33 W. Va. 738; *Dyer* v. *Duffy,* 39 W. Va. 148; *Catlett* v. *Bloyd,* 83 W. Va. 776. The subsequent acts of the parties are all the evidence we have on the question of acceptance of the offer by plaintiff, and they clearly show that if there was any under standing, it was that the lease should continue under the terms contained in the original written instrument. There could have been no meeting of the minds under any other theory. It is clear that Prichard never accepted plaintiff's offer. And by plaintiff's acceptance of the quarterly payments for so long a time, he had a right to believe his understanding of the contract was correct.

There being no evidence to support plaintiff's theory that defendant accepted the change in the renewal, the trial court should have given to the jury defendant's peremptory instruction to find for it.

The judgment will be reversed, the verdict of the jury set aside, and the defendant awarded a new trial.

> *Judgment reversed; verdict set aside;*
> *new trial awarded.*