H. JAMES HARNER *v.* GUY F. HARNER

(No. 7963)

Submitted October 10, 1934. Decided October 23, 1934.

458

*Stewart & Hamstead,* for appellant.

*Minter L. Wilson* and *Mason & Haden* and *L. Steele Trotter,* for appellee.

HATCHER, JUDGE:

This suit was brought by a father to recover from his son the possession of Liberty Bonds of the par value of $39,000.00. The son claims the bonds were given to him by his father on July 2, 1931. The issue was first submitted to a jury which failed to agree. The issue was then submitted to the trial chancellor on the evidence before the jury, and he rendered and recorded his opinion (December 26, 1933) in favor of the plaintiff, without making, however, a final adjudication. (On this see *Coltrane* v. *Gill,* 99 W. Va. 447, 129 S. E. 469.) The defendant at once procured a continuance on the ground of after-discovered evidence. Both parties took more evidence and again submitted the cause to the chancellor. Upon the second submission he found (February 8, 1934) for the defendant.

The plaintiff is now aged eighty years. Including the bonds in question, he has accumulated some fifty thousand dollars in liquid securities. The defendant is aged forty-two. He is married and with his wife had resided in the home of the plaintiff for seventeen years prior to the present disagreement. The son and father had theretofore dwelt and worked together in perfect har-

mony and confidence. The plaintiff has one other child— a married daughter. For years plaintiff had shown a decided preference for his son. That preference was expressed not only in declarations but in substantial monetary gifts. In 1921 plaintiff made a will in which he devised $10,000.00 in Liberty Bonds to his daughter, a life estate in his farm (120 acres) to his wife, and the remainder in the farm and all the rest of his estate to the defendant. The plaintiff's wife died in June, 1931. On July 2nd following, he conveyed his farm to the defendant, reserving to himself a life estate. Upon the same day the plaintiff cancelled and delivered to the defendant two notes of the latter aggregating $2,700.00, together with the bonds in question. The bonds were placed in the defendant's safety deposit box in a bank. The plaintiff denies a gift and takes the position that the bonds were delivered to the defendant only for safe-keeping.

It is not necessary to set forth the evidence in detail, as it may be grouped in classes. A number of witnesses testified to declarations of the plaintiff expressing his intention to leave the bulk of his property to his son. That class of testimony may be disposed of here as merely illustrating a conceded fact. *Five* witnesses testified that after July 2, 1931, they (separately) had heard the plaintiff say he had given the bonds, or "part of my bonds", or "about everything I have", etc., to the defendant. Fully as many witnesses testified to words and conduct of the defendant after July 2, 1931, absolutely inconsistent with his ownership of the bonds. There are several apparent conflicts in the testimony of the plaintiff. In the first opinion the chancellor attributed the conflicts to the plaintiff's advanced age, but said that in any event "they are offset by the (very) perfection of Guy's (defendant's) evidence * * * leaving no advantage to either side there." The chancellor also offset the defendant's assertion of a gift with plaintiff's denial thereof, and held that the defendant had failed to sustain the burden of proof. The chancellor went even further and held that the plaintiff had preponderated. His reasons given therefor, follow:

"There are left the two outstanding facts which seem to the Court to be determinative of this case, to-wit, first, that James, (the plaintiff) in Guy's presence, assessed those bonds to himself in 1932, and that Guy, in James' presence, did not assess those bonds to himself in 1932 (each party signed and swore to his assessment return) ; second, Guy's silence in the presence of Cox, Hartigan, Breakiron and Hartman.

As to the assessments, they are acts which are uncontradicted, the assessment records themselves having been introduced, and are explained only by Guy by saying that it was in furtherance of his statement of the conditions of the gift and that they be kept silent. The Court does not believe that the parties would have made an agreement which would have bound them to commit perjury, and, therefore, the Court resolves the 1932 assessments as a strong factor in favor of James.

As to the unquestioned silence of Guy when asked by Judge Cox, Doctor Hartigan and George Breakiron (mutual friends of the parties, before whom defendant was charged by plaintiff in the spring of 1933 with wrongfully holding his bonds) why he didn't give back to James James' bonds when James had then asserted in Guy's presence his own ownership of those bonds, as well as almost the same situation in the presence of E. L. Hartman, is also a very strong factor in the Court's mind in favor of James. Guy's explanation of that silence is not satisfactory. * * * It seems to the Court most unusual that Guy failed to claim the bonds when Cox, Hartigan and Breakiron asked him specifically about them."

To the two facts which seemed outstanding to the chancellor should be added other circumstances. (1) The defendant admitted that the interest coupons of the bonds in his possession, payable in the fall of 1931, in the spring of 1932, and again in the fall of 1932, amounting in all to about $2,500.00, were turned over by him *seriatim* to the plaintiff. He claimed no agreement to do so concurrent with the alleged gift, but explained that on September 8, 1931, the plaintiff sold a security retained

by him and paid off a note of defendant for $1,500.00, saying that defendant could refund the payment from the coupons; that he turned over the coupons maturing in 1931 and in the spring of 1932 to the plaintiff for that purpose; and that he delivered the coupons maturing in the fall of 1932 to plaintiff just to satisfy him. In the first opinion, the chancellor "eliminated" (his word) the defendant's explanation because of the plaintiff's denial thereof. At that time, the explanation was evidently treated as merely contributing to "the perfection of Guy's evidence." With the explanation eliminated, the plaintiff's continued domination of the income from the bonds strongly demonstrates his continued ownership of the bonds themselves. (2) The defendant made no open claim to or use of the bonds until many months after the alleged gift, during which period he was *severely pressed for money.*

Of the five witnesses for defendant who narrated declarations of the plaintiff, two testified before the chancellor rendered his first opinion. He then "offset" their testimony with two specific admissions allegedly made by defendant. The subsequent testimony of the other three witnesses is merely cumulative and is just as susceptible of offset by other alleged statements of defendant as the testimony before the chancellor in the first instance. But he treated the later evidence *as conclusive of the gift.* One of the later declarations was made by plaintiff to an applicant (a stranger) for a loan of money, which the plaintiff did not care to make. Another was made, according to the witness himself, when the plaintiff was "blowing" about his wealth. The third was made to a prospective purchaser of some farm stock, with whom the plaintiff refused to deal. We cannot agree that declarations made under such circumstances warrant major consideration. Declarations in casual conversations do not ordinarily afford sufficient evidence of a gift, especially when inconsistent with the conduct of the parties. 28 C. J., subject Gifts, sec. 87; *Harrison* v. *Harrison,* 36 W. Va. 556, 15 S. E. 87. The following remarks of the court in *White* v. *White,* 64 W. Va. 30, 35, 60 S. E. 885,

are equally applicable here: "All the declarations of the ancestor to which the witnesses in this cause have testified, are susceptible of a qualified meaning. Though he did say to one witness he had given the land to his son, to another, the land belonged to his son, to another it no longer belonged to him, and to another he was making his home with his son, he may not have meant or intended all these expressions literally import. In seeking his intention, it is not only permissible, but necessary, to inquire whether the literal import of the words harmonizes with the intent *reflected by the conduct of the parties*." Accord: *Dill* v. *Westbrook,* 226 Pa. 217, 225, 75 A. 252.

The defendant leans heavily on the rule that it is the special province of the trial chancellor to pass on conflicting evidence. We have accorded him that right and accepted as true the testimony of the witnesses specifically relied upon in his second (written) opinion. (We have done so, despite the singularity that the defendant's star witness—"after discovered"—could narrate with exactness a long interview with plaintiff more than two years after it occurred. The interview covered five pages in the printed record and related to matters in which the witness had no personal interest. On such testimony see *Waugh* v. *Richardson,* 107 W. Va. 43, 48, 147 S. E. 17.) But it is also the rule that the sufficiency of the evidence to sustain the finding of a trial chancellor "is one of law and in consequence reviewable by the appellate court." 4. C. J., subject Appeal and Error, sections 2854-5. Accord: 2 R. C. L., subject Appeal and Error, section 173.

For a century in the Virginias it has been settled law that evidence "should be clear and cogent" to sustain an alleged parol gift, *inter vivos,* of the bulk of an aged parent's personal estate to his child. *Collins* v. *Lofftus,* (1839) 10 Leigh 5. "In every instance the burden is upon the alleged donee to establish the gift." *Grace* v. *Trust Co.,* 150 Va. 56, 142 S. E. 378. But a mere preponderance of the evidence will not sustain that burden. "A contract (gift) between a parent and child, from the nature of the relation, requires to be proved by a kind of evidence much stronger than that which might suffice

between strangers." *Harrison* v. *Harrison, supra.* The proof must be "clear, unequivocal and convincing." *Martin* v. *Smith,* 25 W. Va. 579. There must be "the strongest evidence to show beyond reasonable doubt that the property was delivered to the donee as a gift." *Seabright* v. *Seabright,* 28 W. Va. 412, 481. Accord: *White* v. *White, supra; Short* v. *Patton,* 79 W. Va. 179, 90 S. E. 598; *Waugh* v. *Richardson, supra,* 48-9. "As between father and son the mere physical fact of possession is not of itself conclusive, nor even material." *Holsberry* v. *Harris,* 56 W. Va. 320, 49 S. E. 404. This is the majority rule. See the well considered case of *Atchley* v. *Rimmer,* (Tenn.) 255 S. W. 366, 30 A. L. R. 1481, 1484-5, and the annotation which follows, commencing on 1492.

When we consider (a) that no witness was present when the alleged gift was made; (b) that no witness testified to having heard the defendant claim the gift or the plaintiff admit it in the presence of each other; (c) that in 1932 (a year after the alleged gift) the defendant swore (in effect) that he did not own the bonds; (d) that in 1932 in defendant's presence plaintiff swore unchallenged that he owned the bonds; (e) that plaintiff exercised dominion over the income of the bonds for months after the alleged gift; (f) that defendant failed to use or publicly claim the bonds for many months after the alleged gift, despite the fact that he was sorely pressed for money during that period; and (g) that defendant kept silent in the presence of mutual friends when arraigned by the plaintiff for withholding the bonds—we cannot treat plaintiff's casual declarations of a gift, even when coupled with his delivery of the bonds to defendant, as such *clear, unequivocal and convincing* proof as to establish the gift *beyond reasonable doubt.* At most the declarations and the delivery are merely indicative of intention to give, rather than evidence of a completed gift.

Accordingly the judgment of the circuit court is reversed and the cause remanded.

*Reversed and remanded.*