BLUEFIELD SUPPLY COMPANY

*v.*

FRANKEL'S APPLIANCES, INC.

(No. 12362)

Submitted May 11, 1965.        Decided June 29, 1965.

*Richardson & Hancock, Robert M. Richardson, Hudgins & Coulling, L. R. Coulling, Jr.,* for appellant.

*Ducker & McCreight, H. L. Ducker, Paul W. McCreight,* for appellee.

HAYMOND, JUDGE:

This is a proceeding by notice of motion for judgment instituted in the Circuit Court of Cabell County in August 1959, in which the plaintiff, Bluefield Supply Company, a corporation, seeks a recovery from the defendant, Frankel's Appliance, Inc., a corporation, upon a stated account for 33 television sets, amounting to $5,054.01, with interest from August 1, 1959, which the plaintiff claims to be due and owing from the defendant as the purchase price of such sets. Attached to the notice was an affidavit in which were stated as items of the claim 33 individual television sets, at the unit price of $155.00, aggregating $5,115.00, and numerous other articles, all of which aggregate $6,220.65, less itemized credits for the items other than the television sets in the amount of $1,166.64, leaving an unpaid balance of the sum of $5,054.01 as the alleged amount of the claim.

On October 26, 1959, the defendant appeared and filed its counter affidavit, in which it denied that any sum was due from the defendant to the plaintiff upon the demand stated in the notice. The proceeding having been instituted before the effective date of the West Virginia Rules of Civil Procedure was in the main tried and determined under the procedure in effect before the adoption of those rules. A pretrial order was entered January 15, 1960, which limited the issues to the question whether the 33 television sets were sold to the defendant to be paid for by it or whether they were delivered to the defendant as an offset against credits claimed by it.

The regular judge of the circuit court deeming himself disqualified, the parties, by agreement, selected a local attorney as a special judge to try, hear and determine the case, and on February 19, 1960, the special judge was duly sworn and qualified and entered upon his duties as such special judge and trial of this proceeding was had before him in lieu of a jury on February 19 and 20 and March 5, 1960.

After considerable delay, of which the plaintiff here complains, the circuit court, the special judge sitting, entered

an order on September 24, 1963, in which the circuit court found that the 33 television sets were transferred by the plaintiff to the defendant to offset credits, that in the existing circumstances the agent of the plaintiff had authority to make such transfer and the defendant was justified in entertaining that assumption, and that the plaintiff had failed to establish its claim by a preponderance of the evidence; and the circuit court rendered judgment in favor of the defendant.

By final order entered November 14, 1963, the circuit court overruled the motion of the plaintiff to set aside the findings and the judgment of the court and to award the plaintiff a new trial of the case. From that judgment this Court granted this appeal upon the application of the plaintiff.

The evidence, unduly voluminous in quantity, contains many unnecessary details and needless repetitions. In consequence it is difficult to set forth a narrative of the material facts by reciting the testimony of each witness. In that situation, instead of detailing the evidence of each of the four witnesses in behalf of the plaintiff who testified either in chief or in rebuttal and of the four witnesses in behalf of the defendant who testified either in chief or in surrebuttal, a summary of the material facts will suffice to indicate the questions presented for decision.

For several years before the occurrence of the transaction involved in this proceeding the parties had engaged in mutual dealings involving sale and purchase of various articles by each of them in an approximate amount of at least $100,000.00 annually and a practice had developed of periodically reconciling and resolving various credits which resulted from the great variety of transactions between the parties. Some of the credits mentioned in the testimony, which in most instances are of little or no importance with respect to the questions presented for decision, relating to the cost of advertising sundry articles sold by the plaintiff to the defendant and paid by it in substantial amounts, appear to have been settled and are not involved in this proceeding. Other credits relating to numerous air-condi-

tioners and various small articles, also sold by the plaintiff to the defendant, are involved in this proceeding and as to them there is a conflict in the evidence.

The plaintiff's witnesses testified in effect that except a small balance of $275.00 or $300.00, all the disputed credits between the parties had been settled and resolved. On the contrary the testimony of witnesses for the defendant was that there was an unresolved credit in the amount of $3,300.00 or $3,500.00, to which the defendant was entitled, which resulted from the sale of certain air-conditioners by the plaintiff to the defendant before the transfer of the television sets and an additional number of credits for small articles aggregating $1,159.70. The total claimed credit, according to the testimony of the bookkeeper of the defendant appearing at one place in the record, amounted to $4,397.21. As previously indicated the amount of such credits is in dispute and the evidence as to them, though conflicting, is extremely vague and uncertain. In fact it is impossible to determine any exact or specific amount of the claimed credits which corresponds with the testimony of all the witnesses in behalf of the defendant, each of whom, in that respect, testified to a different amount. The book-keeper of the defendant also testified that the claimed credits consisted of $3,300.00 with relation to certain air-condition-ers and an additional number of credits for small articles aggregating $1,159.70, or a total claimed credit of $4,459.70, and he admitted that the credits so claimed were less than the purchase price of the television sets.

The evidence of the plaintiff consisting of the testimony of its treasurer was that after allowing the defendant credits in the sum of $167.42, the amount of the plaintiff's claim for which it demanded judgment was $4,886.59, with interest from August 1, 1959.

With respect to the item of the 33 television sets there is evidence that sometime in June 1958 an employee of the plaintiff, at its Huntington warehouse, received a written order from the defendant for the 33 television sets in ques-tion and at that time he talked by telephone to the general manager of the defendant and requested and received per-

mission to sign the general manager's name to the order, which he did. The general manager of the defendant testified that he asked the employee of the plaintiff to transmit the customary bill of lading and sales slips to Irving Looney, sales promotion manager of the plaintiff, at its Bluefield office, who he said would handle the transaction and according to the testimony of the general manager of the defendant he gave those directions at the instance of Looney.

Pursuant to the written order, No. 4960, for the television sets, the employee delivered the sets to the proper representative of the defendant, a few sets at a time during a period of several days, the last delivery having been made on June 26, 1958, and at that time he prepared copies of the bill of lading and sales slips, retained one copy, and sent one copy to the defendant at its Huntington office and two copies to the plaintiff at Bluefield.

It is clear from the evidence that the papers sent to Bluefield were in some manner misplaced or lost at the Bluefield office of the plaintiff but the items were entered in the perpetual inventory record at that place. The delivery of the television sets, however, in some unaccountable manner was not discovered until the perpetual inventory record was examined in April 1959 and at that time the delivery on June 26, 1958 was definitely established by the records of the plaintiff. The plaintiff then billed the defendant for the sets. The general manager of the defendant twice replied in writing to the request of the plaintiff for payment that the sets had not been received, although he admitted that when he made those statements he knew that the sets had been received. His explanation for his false statements was that he made such answer to protect Looney who, according to the testimony of the general manager and other witnesses in behalf of the defendant, had assured them that the defendant would not have to pay for the sets but that Looney would be able, to avoid red tape and possible objections of the officers of the plaintiff, to cancel credits claimed by the defendant by the transfer and delivery of the television sets and that the defendant would not have to pay for the sets in any other manner. Looney emphatically denied that he

had ever made such arrangement with any of the representatives of the defendant. The evidence shows that there was an unusual delay of approximately nine months between the delivery of the television sets in June 1958 and the transmission of a bill for these articles to the defendant in April 1959, but the delay is explained by undisputed evidence. It also appears that the defendant did not claim credits against the charge for the television sets until it presented that defense during the pendency of this action.

Except the testimony of the representatives of the defendant, particularly that of its general manager who had already twice falsely informed the plaintiff that the defendant had not received the 33 television sets when he knew that they had been received and who, as stated, explained his misstatement as having been made to protect Looney in his effort to cancel the charge for the sets by allowing disputed claimed credits, there is no evidence that Looney suggested or handled the transfer of the sets or in any way endeavored to negotiate or cause the allowance of credits in lieu of payment for the sets by the defendant. The evidence discloses no reason for or justification of the misstatements of the general manager of the defendant which he said were made to protect Looney. There is nothing in the evidence to indicate that Looney needed, wanted or requested any such protection or to support the statement of the general manager of the defendant that Looney said that if he failed to handle the transaction on a payment by credit basis he would be responsible and, if necessary, would personally pay for the sets. These statements Looney emphatically denied in his testimony.

Though it appears that Looney knew about the transfer of the television sets it is clear from the evidence that he was not present when the sets were delivered and that he issued no written order for their delivery. The evidence is undisputed that Looney, as the sales promotion manager of the plaintiff, was in charge of its sales to the defendant which consisted in part of equipment and appliances manufactured by Hotpoint Company during a period of approximately two years before the sets were transferred and that

he had authority to issue credit slips in connection with disputed or claimed items of credit between the parties. He and the treasurer and the vice president of the plaintiff, under whom Looney worked, all testified that Looney did not have authority to settle any claimed credits by the transfer of articles of merchandise and did not have authority to authorize credits claimed by the defendant in exchange for the delivery of the television sets, and that the plaintiff did not permit a transfer of merchandise as an offset against credits.

All the witnesses who testified concerning the transaction admitted that it was the only instance in which an attempt had been made to give any credit claimed by the defendant by offsetting such credit against a delivery of merchandise and that in every instance in which credits claimed by the defendant had been allowed the credits had been given by the issuance of credit slips. The testimony of witnesses of the defendant indicates clearly that they knew that any effort of Looney to obtain credit in satisfaction of the claim for the television sets was being made without the knowledge and consent of the officers of the plaintiff who were his superiors; and it is evident that they at least doubted that he had such authority. Though they admitted that his undertaking in that respect was unusual and unprecedented they stated that they did not consider it wrongful or unauthorized.

From the evidence it is doubtful whether the defendant has acted in good faith in advancing the belief of its representatives who testified in its behalf that Looney had the authority to satisfy the claim of the plaintiff for the television sets by allowing or offsetting the credits claimed by the defendant instead of requiring payment for the sets in the ordinary course of business. Nothing in the evidence supports or justifies any claim or contention of payment for the sets in any manner other than in the ordinary course of trade.

The evidence also discloses that there were two joint meetings at Bluefield between representatives of each of the parties, one in July 1958 and the other in July 1959.

At the first meeting the matter of the transfer of the television sets was not discussed but at the second conference in July 1959 the question of the credits claimed for the air-conditioners of $3,300.00 or $3,500.00 was discussed but not settled. Sometime later, on July 27, 1959, the treasurer of the plaintiff wrote the defendant demanding payment of the account and notifying the defendant that suit would be instituted unless it was paid by a designated date, after which, payment not having been made, this action was instituted.

It is likewise clear from the evidence that the television sets which were delivered to and received by the defendant, as heretofore outlined, have not been paid for unless payment has been made in the manner claimed by the defendant by the cancellation of credits which do not equal the amount of the claim of the plaintiff but aggregate a substantially smaller·sum.

It is clear from a decided preponderance of the evidence that the transaction by which the 33 television sets were transferred from the plaintiff to the defendant was a sale of those articles in the due course of trade. When that occurs the seller, in this instance the plaintiff, is entitled to payment in currency for the purchased articles. To escape liability for the selling price of the sets which, subject to an allowed credit of $167.42, amounted to the net sum of $4,886.59, the defendant had the burden of showing payment of the claim. This it has completely failed to do.

The defense of payment, though admissible under the plea of the general issue by the procedure in general use prior to the adoption of the West Virginia Rules of Civil Procedure which became effective July 1, 1960, is an affirmative defense and the burden of proof is upon the party who relies upon that defense to establish it. In this instance that burden rested upon the defendant. *Saunders* v. *Huffman,* 119 W. Va. 31, 192 S. E. 297; *Sattarelli* v. *Cropper,* 109 W. Va. 430, 155 S. E. 312; *Woodyard* v. *Sayre,* 90 W. Va. 547, 111 S. E. 313; *Linn* v. *Collins,* 77 W. Va. 592, 87 S. E. 934, Ann. Cas. 1918C 86; *Dodrill's Executors* v. *Gregory's Administrator,* 60 W. Va. 118, 53 S. E. 922; *Rowe's Adm'r.* v.

*Hardy's Adm'r.,* 97 Va. 674, 34 S. E. 625, 75 Am. St. Rep. 811; *Todd* v. *Sykes,* 97 Va. 143, 33 S. E. 517. This burden the defendant has utterly failed to satisfy or discharge.

It is also clear from the evidence that Looney was the sales agent of the plaintiff and that he had full authority to handle its sales to the defendant and to recognize and settle claims of the defendant for credits resulting from such sales. The existence of such agency is admitted and conceded by the witnesses in behalf of the plaintiff. It is also clear from the evidence, however, that on no other occasion was any attempt ever made by Looney or any other agent of the plaintiff to accept as payment for an order of merchandise sold or delivered to the defendant an allowance or cancellation of any credits claimed by the defendant. This is admitted by the witnesses in behalf of the defendant.

The evidence shows that the only authority that Looney had with respect to the granting of credits claimed by the defendant was by the issuance of credit slips or memoranda which was the manner in which such matters were handled in due course of business between the plaintiff and the defendant and it appears that the defendant was given credit in that manner for $660.00 of the $3,300.00 claimed in connection with the prior transaction relating to the air-conditioners. The evidence does not show any course of conduct by which any duly authorized representative of the plaintiff could have led the defendant to believe that Looney had the apparent authority to accept or offset credits claimed by the defendant in exchange for or in payment of merchandise transferred or delivered to the defendant by the plaintiff. Though the witnesses in behalf of the defendant stated that Looney gave assurance that he would take care of the transfer of the television sets by allowing credits they do not explain how he proposed to accomplish that result or what credits would be allowed.

The general rule is that the authority of an agent to perform the act in question must be proved. *Rees Electric Company, Inc.* v. *Mullens Smokeless Coal Company,* 141 W. Va. 244, 89 S. E. 2d 619; *Means* v. *Southeastern Gas Com-*

*pany,* 113 W. Va. 864, 169 S. E. 390; *Grafton and Greenbrier Railroad Company* v. *Davisson,* 45 W. Va. 12, 29 S. E. 1028, 72 Am. St. Rep. 799. The law indulges no presumption that an agency exists; on the contrary a person is legally presumed to be acting for himself and not as the agent of another person; and the burden of proving an agency rests upon him who alleges the existence of the agency. It is also well established that a person who deals with an agent is bound at his own peril to know the authority of the agent. *Rees Electric Company, Inc.* v. *Mullens Smokeless Coal Company,* 141 W. Va. 244, 89 S. E. 2d 619; *Gallagher* v. *Washington County Savings, Loan and Building Company,* 125 W. Va. 791, 25 S. E. 2d 914; *Allen* v. *Southern West Virginia Oil and Gas Corporation,* 104 W. Va. 517, 140 S. E. 529; *Uniontown Grocery Company* v. *Dawson,* 68 W. Va. 332, 69 S. E. 845, Ann. Cas. 1912B 148; *Raney* v. *Barnes Lumber Corporation,* 195 Va. 956, 81 S. E. 2d 578; *Brumley* v. *Grimstead,* 170 Va. 340, 196 S. E. 668; *Fochtman* v. *Clanton's Auto Auction Sales,* 233 S. C. 581, 106 S. E. 2d 272. In point 1 of the syllabus in *Rosendorf* v. *Poling,* 48 W. Va. 621, 37 S. E. 555, this Court said that "Where a person deals with an agent, it is his duty to ascertain the extent of the agency. He deals with him at his own risk. The law presumes him to know the extent of the agent's power; and, if the agent exceeds his authority, the contract will not bind the principal, but will bind the agent." See also *Payne Realty Company* v. *Lindsey,* 91 W. Va. 127, 112 S. E. 306; *Cobb* v. *Glen Boom and Lumber Company,* 57 W. Va. 49, 49 S. E. 1005, 110 Am. St. Rep. 734; *Crawford* v. *Whittaker,* 42 W. Va. 430, 26 S. E. 516; *Dyer* v. *Duffy,* 39 W. Va. 148, 19 S. E. 540, 24 L. R. A. 339; *Curry* v. *Hale,* 15 W. Va. 867. As a general rule, however, when an agency relationship has been established the burden is on the principal to prove that the agent was not acting within the scope of his authority when he committed the act as to which his authority is questioned. *United Brotherhood of Carpenters and Joiners of America, AFL-CIO* v. *Humphreys,* 203 Va. 781, 127 S. E. 2d 98; *Slaughter* v. *Valleydale Packers, Incorporated of Bristol,* 198 Va. 339, 94 S. E. 2d 260; *Alvey, Trading as J and J Garage* v. *Butchkavitz,* 196 Va. 447, 84 S. E. 2d 535.

In 1 Michie's Jurisprudence, Agency, Section 20, the text contains these statements: "Whether or not a contract made by an agent for his principal, which was not expressly authorized and subsequently ratified by the principal, is binding on the principal, is dependent upon whether or not it was within the apparent scope of the authority of the agent to make such contract. * * * .", and "An act is within the apparent scope of an agent's authority when a reasonably prudent person having knowledge of the usages of the business, is justified in supposing that he is authorized to perform it from the character of the known duties. * * * ." In 3 Am. Jur. 2d, Agency, Section 350, the text contains these statements:

"Where the fact of agency is uncontroverted or admitted, and the agent was apparently acting for his principal as to the business in hand, a presumption arises that the agent was acting within the scope of his authority. Thus, where it appears that an agent has done an act for the benefit of his principal and that the latter has not questioned the authority of the agent to bind him, it will be presumed, until the contrary appears, that the agent was duly authorized.

"As to the nature and extent of authority, where an agency is proved without showing its extent, it is presumed that a general authority has been given in regard to the business in which such agency is concerned. It has also been held that persons dealing with the agent have a right to presume that his agency is general, and not limited. If general authority is established, and the act of the agent is not shown to be of an unusual or extraordinary character, the presumption is that the agent had authority to do that act."

When an agency is shown or admitted, but the particular act is unusual and not necessarily incident to the purpose of the agency, the party with whom the agent deals has the burden of showing that the agent had authority from the principal to perform the act in question; but when an agency apparently covering the subject matter in question is established or admitted, the principal has the burden of proving any special limitations of authority and that the other party

had notice or knowledge of such limitations. 3 C. J. S., Agency, Section 317 (2) (a). In the opinion in *Union Bank and Trust Company* v. *Long Pole Lumber Company*, 70 W. Va. 558, 74 S. E. 674, this Court, quoting from *The First National Bank of Wellsburg* v. *Kimberlands*, 16 W. Va. 555, with respect to the acts of an agent, said: "If the acts, he was in the habit of doing, were not thus numerous and variant, to justify the inference, that he had authority to do the particular act or make the particular contract for the corporation, the acts so done must be of the same general character, so as to involve the same general power, though it may be applied in the particular act or contract done or made to a different subject." In *Motor Car Supply Company* v. *Nicholas Hardware and Furniture Company*, 111 W. Va. 252, 161 S. E. 31, this Court held in the syllabus that the implied authority of a traveling salesman is limited to sales upon such terms as are reasonable or comport with the usages of trade and that he has no authority to confer on a purchaser an unlimited right to return the purchased goods. In the North Carolina case of *J. A. Fay and Egan Company* v. *Crowell*, 184 N. C. 415, 114 S. E. 529, the court said that though a sales manager would presumably have sufficient authority to secure a stipulation in a sales contract that retention of the property for more than thirty days should constitute a trial and acceptance and conclusively admit the truth of the seller's representations, the burden of proof as to such authority is on the buyer in an action by the seller to recover on the purchase money notes. With respect to any claim of the defendant that Looney had the authority to allow credits in satisfaction of the transfer of the television sets, it was the legal duty of the defendant to ascertain whether he had that authority. In 2 C. J. S., Agency, Section 107, the text contains this statement: "Whenever a debtor makes payment to an agent in a medium other than money, he is under a duty to ascertain whether the agent's authority allows him to receive payment in the manner in which it is made." See also *Robinson* v. *Anderson*, 106 Ind. 152, 6 N. E. 12.

Here the transaction in question was unusual, unprecedented and extraordinary and not necessarily incident to

the purpose of the agency as to the authority of Looney, as such agent, to cancel payment for the sale of the 33 television sets by the allowance of the credits claimed by the defendant in a smaller amount. In view of the unusual, unprecedented and extraordinary character of the transaction in controversy in this case, and for that reason, the burden of showing that Looney as such agent had the authority from the plaintiff, his principal, to conclude such transaction is upon the defendant; but even if the burden of proving that the limitation of the authority of Looney did not permit him to deal with the sale of the television sets in that manner should rest upon the plaintiff, the decided preponderance of the evidence is sufficient to show that Looney did not have such authority and that the burden of proving such lack of authority has been fully met and satisfied by the plaintiff.

When the plaintiff by its evidence in chief has established a prima facie case in support of its claim for payment of its account the burden of going forward with the evidence to establish the defense of payment and the defense that the agent of the plaintiff had the authority to cancel the price of the television sets by the allowance of credits claimed by the defendant shifted to the defendant. The burden of proving the defense of payment and of establishing the authority of the agent of the plaintiff in view of the unusual, unprecedented and extraordinary character of the acts of allowing credits in payment of the television sets, rested upon the defendant. The burden of proof to establish the claim of the plaintiff, however, which unlike the burden of going forward with the evidence does not shift, rested upon the plaintiff who is required to establish its claim by a preponderance of all the evidence. See *Prettyman* v. *Hopkins Motor Company*, 139 W. Va. 711, 81 S. E. 2d 78.

It is well established by the decisions of this Court that the finding of a trial court upon the facts submitted to it in lieu of a jury will be given the same weight as the verdict of a jury and will not be disturbed by an appellate court unless the evidence plainly and decidedly preponderates against such finding. *DeLong* v. *The Farmers Building and*

*Loan Association,* 148 W. Va. 625, 137 S. E. 2d 11; *Cotiga Development Company* v. *United Fuel Gas Company,* 147 W. Va. 484, 128 S. E. 2d 626; *Daugherty* v. *Ellis,* 142 W. Va. 340, 97 S. E. 2d 33; *Edwards* v. *Hylbert,* 146 W. Va. 1, 118 S. E. 2d 347; *Green* v. *Henderson,* 136 W. Va. 329, 67 S. E. 2d 554; *Watkins* v. *Norfolk and Western Railway Company,* 125 W. Va. 159, 23 S. E. 2d 621.

It is equally well settled, however, that when the finding of a trial court in a case tried by it in lieu of a jury is against the preponderance of the evidence, is not supported by the evidence, or is plainly wrong, such finding will be reversed and set aside by this Court upon appellate review. *J. & G. Construction Company* v. *Freeport Coal Company,* 147 W. Va. 563, 129 S. E. 2d 834; *Huntington Development and Gas Company* v. *Topping,* 115 W. Va. 364, 176 S. E. 424; *McKown* v. *Citizens' State Bank of Ripley,* 91 W. Va. 716, 114 S. E. 271. See also *Weaver* v. *Trembly,* 126 W. Va. 802, 30 S. E. 2d 242; *LaFollette* v. *Croft,* 122 W. Va. 727, 14 S. E. 2d 917; *Purcell* v. *Robertson,* 122 W. Va. 287, 8 S. E. 2d 881; *Buskirk* v. *Bankers Finance Corporation,* 121 W. Va. 361, 3 S. E. 2d 450; *Gall* v. *Cowell,* 118 W. Va. 263, 190 S. E. 130; *Harner* v. *Harner,* 115 W. Va. 457, 177 S. E. 286; *Blue* v. *Hazel-Atlas Glass Company,* 106 W. Va. 642, 147 S. E. 22.

The plaintiff has established its account against the defendant for the 33 television sets by a decided preponderance of the evidence and the defendant has shown no valid or sufficient defense to the claim of the plaintiff. The factual findings of the circuit court that the 33 television sets were transferred to the defendant by the agent of the plaintiff to offset credits and that such agent had the authority to make such transfer, that the defendant was justified in assuming that he had such authority, and that the plaintiff has failed to prove its claim by a preponderance of the evidence, are contrary to the evidence and are plainly wrong. As the findings of the circuit court are plainly wrong, such findings and the judgment rendered in favor of the defendant must be reversed and set aside.

It is evident that neither party, upon a retrial of the case, could submit any other or additional evidence that could

result in a judgment for the defendant. ·The evidence decidedly preponderates against the findings of the trial court upon the evidence and under the decisions of this Court when, on the trial of a case, the evidence decidedly preponderates against the verdict of a jury or the finding of a trial court upon the evidence, this Court will, upon review, reverse the judgment and if, as here, the case was tried by the circuit court in lieu of a jury, will make such finding and render such judgment on the evidence as the trial court should have done. *Huntington Development and Gas Company* v. *Topping,* 115 W. Va. 364, 176 S. E. 424; *McKown* v. *Citizens' State Bank of Ripley,* 91 W. Va. 716, 114 S. E. 271. See also 1 Michie's Jurisprudence, Appeal and Error, Section 327.

In view of the long and unwarranted delay in the decision of the case by the trial court and in order to avoid an unnecessary retrial and the consequent further delay, this Court, applying the principle set forth in the last above cited cases, finds that the plaintiff, under the evidence shown by the record, is entitled to a recovery from the defendant in the principal sum of $4,886.59, with interest from August 1, 1959, and costs, and accordingly renders judgment here in favor of the plaintiff in that amount.

*Reversed and rendered.*